WOODRUFF CONSTRUCTION
COMPANY, Appellant,

v.

BARRICK ROOFERS, INC., An Iowa
Corporation, Appellee.

No. 85–1800.

Supreme Court of Iowa.

May 13, 1987.

Rehearing Denied June 12, 1987.

Hayward L. Draper of Nyemaster, Goode, McLaughlin, Emery & O'Brien, P.C., Des Moines, for appellant.

R. Todd Gaffney of Duncan, Jones, Riley & Finley, Des Moines, for appellee.

Considered by REYNOLDSON, C.J., and McGIVERIN, LARSON, LAVORATO and NEUMAN, JJ.

LARSON, Justice.

Craig West, an employee of Barrick Roofers, Inc., was seriously injured when he fell through the roof of a gymnasium being repaired by Barrick under a subcontract with Woodruff Construction Company, the general contractor. West collected workers' compensation from Barrick and also brought a negligence suit against Woodruff. Woodruff settled with West and then brought the present action for indemnity against West's employer, Barrick. (Woodruff's suit against an employee of Barrick for contribution is the subject of the companion appeal, *Woodruff Construction Co. v. Mains*, 406 N.W. 2d 787.)

The sole issue presented in this appeal is whether Barrick had an implied duty to indemnify Woodruff for the breach of its duty to perform the roofing subcontract with due care. The district court held that it did not, and we affirm.

The Woodruff-Barrick subcontract was a one-page proposal and acceptance, providing generally that the work would be done according to specifications, and stating in general terms the labor and material to be furnished and the bid price. It is agreed by the parties that the subcontract is silent on the question of indemnity.

In the repair process, Barrick's employees tore off the outer membrane of the old roof and, when they located a "soft spot" in the underlying deck, notified Woodruff. Woodruff then removed the decayed material and inserted a prefabricated wood panel. (Woodruff was the carpenter on the job, as well as the general contractor.) The site was then turned back to Barrick to cover the repair with new roofing material.

During the time between removal of the outer membrane and before the installation of the new panel, these soft spots were potential hazards, and it was at such a time that Craig West fell through one of them. (The details of this fall are more pertinent on the contribution issue and will be discussed in more detail in the companion case.)

West received workers' compensation from Barrick, then filed a suit against Woodruff, alleging negligence in creating the dangerous condition. Woodruff settled with West, then sought indemnity from Barrick and contribution from several of the other principals involved. At trial, special verdict forms were submitted to the jury, which found that Dale Mains (Barrick's foreman and West's co-employee), was grossly negligent. *See* Iowa Code section 85.20 (recovery against co-employee allowed only when co-employee guilty of "gross negligence amounting to such lack of care as to amount to wanton neglect for the safety of another").

The jury found Woodruff guilty of simple negligence. It also found the negligence of both Mains and Barrick were proximate causes of West's fall and assessed sixty percent of the negligence to Woodruff and forty percent to Mains. Based on these findings, the court entered a judgment for contribution in favor of Woodruff and against Mains for forty percent of Woodruff's claim. As already noted, this is the subject matter of the companion appeal.

In regard to the indemnity claim, the court found that Barrick had breached its implied duty of due care, based on the gross negligence of its employee, Mains, but held that Woodruff was still not entitled to indemnity. The court reasoned that, because Woodruff was sixty percent at fault, it would be inconsistent with the equitable principles of indemnity to allow it to recover.

Woodruff's argument on appeal is that Barrick impliedly agreed to perform its roofing subcontract with due care and to indemnify Woodruff in the event it failed to do so. It argues that, because the jury found Barrick's employee to be negligent, a breach of the implied agreement of due care was established. The right to indemnity must therefore follow, according to its argument. In response, Barrick concedes that it had breached its implied duty of due care, but it argues that there was no implied agreement to indemnify Woodruff under the circumstances.

The parties agree that both parties were at fault and that their negligence combined to cause West's fall. (While Woodruff argues that the *percentages* of fault—sixty percent to Woodruff and forty percent to Barrick, through its employee Mains—are not binding on the indemnity issue, it concedes for indemnity purposes that both parties were negligent to *some* degree.) The parties also agree that the amount of $468,496.80, paid by Woodruff to settle the West claim, was fair and reasonable.

At the outset, the exclusive-remedy provisions of our workers' compensation statute must be considered. It provides that:

The rights and remedies provided in this chapter, chapter 85A or chapter 85B for an employee on account of injury, occupational disease or occupational hearing loss for which benefits under this chapter, chapter 85A or chapter 85B are recoverable, *shall be the exclusive and only rights and remedies of such employee,* the employee's personal or legal representatives, dependents, or next of kin, at common law or otherwise, on account of such injury, occupational disease, or occupational hearing loss....

Iowa Code § 85.20 (1985) (emphasis added).

One argument against indemnity is that, if it were to be allowed against an employer, the end result would be that the employer would be required to pay, on account of the injury, sums over and above workers' compensation benefits, despite the exclusive-remedy provisions of compensation law. *See* 2A A. Larson, *The Law of Workmen's Compensation* § 76.11, at 14–562 (1986) [hereinafter Larson].

On the other hand, it is argued that exclusive-remedy provisions were intended only to prohibit actions against employers based on injuries to employees, not those

based on an independent duty owed by the employer, such as under a contract. One author has observed that

> the immunity conferred [on the employer] is only against actions for damages on account of the employee's injury; a third party's action for indemnity is not exactly for "damages" but for reimbursement, and it is not "on account of" the employee's injury, but on account of breach of an independent duty owed by the employer to the third party.

A. Larson, *Workmen's Compensation: Third Party's Action Over Against Employer,* 65 Nw.U.L.Rev. 351, 368–69 (1970). *Accord* Larson, § 76.62(a), at 14–658. In Iowa, we have adopted this view, holding that such a provision will not automatically preclude indemnity against an employer, *Blackford v. Sioux City Dressed Pork, Inc.,* 254 Iowa 845, 855, 118 N.W.2d 559, 565 (1962). As discussed later, we believe the exclusive-remedy provision of our workers' compensation law is nevertheless a proper consideration in determining whether an implied agreement will be recognized under the particular circumstances of the case.

When an employer is the proposed indemnitor, the question whether an indemnity agreement will be implied under the circumstances of a particular case is a complex one, and its resolution turns on application of diverse and often competing, interests including public policy, simplicity of administration, fairness, and the underlying philosophy of workers' compensation law. *See* W. Prosser & R. Keeton, *Prosser and Keeton on Torts* § 51, at 344–45 (5th ed. 1984); Larson, §§ 76.90–.93, at 14–756 to 65. Under these circumstances, there is no right or wrong answer.

We begin with a look at the general law of implied contracts. Such contracts may be said to fall into two broad categories: (1) those that arise by actual interpretation of an agreement, *i.e.,* by searching for the meaning given to the agreement by one or both of the parties; and (2) those that put into promissory language the court's finding that a party to the agreement ought to act as if he had made such a promise, even though nobody actually thought of it or used words to express it. 3 *Corbin on Contracts* § 561, at 279 (1960).

In the present case, Woodruff does not contend the parties actually intended to provide for indemnity; the issue was apparently never considered by either of them. The case therefore does not fall under the first general category of implied agreements. The question then becomes whether the law, for policy or other reasons, should impose such a duty on Barrick to indemnify Woodruff regardless of the circumstances, including Woodruff's own negligence.

This raises the issue of whether full indemnity may be required under these circumstances. Woodruff argues that its own negligence is of no significance, citing *Blackford.* It argues that the law implies a duty to indemnify it in full, even if Woodruff itself was found to be negligent. In fact, it argues that it would be entitled to full indemnity even if it were found to be ninety-nine percent at fault. We will discuss *Blackford* later, but for the present we summarily reject the argument that the law implies a right to indemnify a party to recover damages attributed to its own negligence. This is not even allowed under an express indemnity agreement, unless provided for in clear and unequivocal language. *Payne Plumbing & Heating Co. v. Bob McKiness Excavating & Grading, Inc.,* 382 N.W.2d 156, 160 (Iowa 1986); Larson, § 76.42, at 14–638 n. 42; 41 Am.Jur.2d *Indemnity* § 15, at 699–700 (1968). An implied agreement to indemnify cannot be elevated to a higher degree of liability than an express one. Larson, § 76.62(e), at 14–672.

The question remains as to what to do about indemnification in those cases for that part of the injury *not* caused by the indemnitee's negligence: Should the law imply an agreement by an employer to indemnify the third party for that? Fairness suggests that it should, and

> [i]ndeed, few areas of law have evoked such daring displays of uninhibited judicial activism with centuries-old doctrines

being bulldozed out of the way to clear a path for an "equitable" compromise.

Larson, § 76.11, at 14–563.

The majority of state courts have taken the course which favors stability over "fairness." Larson, § 76.92(a), at 14–761.

When courts have decided to elevate fairness above all other considerations, including stability, the result has usually been to proportion the ultimate liability of employer and third party to the relative fault, as in New York and until 1979, in Illinois.

Appealing as this is at first blush, it is subject to question in at least three respects—leaving aside the damage done to the concept of *stare decisis*, which the courts in these instances plainly felt was outweighed by the injustice being perpetuated.

The first observation is that the New York-Illinois approach gives zero weight to the factor of the employer's traditional immunity to liability beyond his compensation obligation. In other words, fairness is appraised as if between two equal strangers, ignoring the fact that one, the employer, has already made concessions and assumed liabilities to the employee, for which his immunity was the *quid pro quo*.

[Here, the author notes an alternative approach adopted by Minnesota which limits the employer's total liability for workers' compensation and third-party suits.]

The second comment is that fairness, in this context, is even more elusive than usual, because it involves a complex mix of different kinds of fault—some real moral fault, some merely fictitious, vicarious or technical. The employer's fault is usually not personal but vicarious; the third party's fault is often virtually absolute, as in unseaworthiness, products liability, automobile owner's liability, and the like. It is no wonder that a strange kind of balancing of fault often results, when the fault being balanced is no-fault on both sides.

The third criticism is that the price of equity will inevitably be the sacrifice of the third value—simplicity. Litigation will be complicated. It would appear that all three parties will have to be involved in practically all cases, with percentage assessments of fault for each. *Id.* at 76.92(b), at 14–761 to 63.

The present case illustrates the problem of attempting to weigh different types of evidence as mentioned by Larson: Barrick's employee was guilty of gross negligence, while Woodruff was guilty of simple negligence. It would be difficult under these circumstances to offset one against the other.

■ We hold that, in this case, where the proposed indemnitee aided in the creation of the hazard, the law should not imply a right to indemnity from the employer. While Professor Larson suggests that a duty to indemnify might be implied where a proposed indemnitee has merely failed to discover a hazard, as opposed to causing one, Larson, § 76.72, at 14–719 to 20, that is not the case here. Woodruff concedes its negligence was in failing to barricade the soft spot. (It is also suggested that a third party should be entitled to indemnity if its liability is, in effect, only technical, such as under an owner liability statute in the case of an automobile, or liability based on a nondelegable duty to maintain a premises. Larson, § 76.72, at 14–718 to 19; Restatement of Restitution § 95, at 416 comment *a* (1937). Again, we do not have either of these situations in this case.)

This brings us to a consideration of the *Blackford* case which, Woodruff argues, mandates a contrary holding. In *Blackford*, R.E. Langley had entered into a contract with Sioux City Dressed Pork, Inc., to furnish the labor for washing the packing plant. Blackford, who was an employee of Langley, was injured when he caught his hand in a cleaning machine.

Blackford received workers' compensation payments from Langley and then sued Sioux City Dressed Pork, claiming it was negligent in furnishing an unsafe machine. Sioux City Dressed Pork then cross-petitioned against Langley for indemnity or contribution, claiming Langley had failed to

properly instruct Blackford in the use of the machine. A motion to dismiss the cross-petition was sustained, and this court reversed. We held that the contract between Langley and Sioux City Dressed Pork implied a duty to perform the cleaning job in a workmanlike manner and with due care. In addition, we held that there could be an implied warranty to indemnify Sioux City Dressed Pork in the event Langley failed to safely perform the contracted duty. 254 Iowa at 850–53, 118 N.W.2d at 562–64. *Blackford* is cited by Woodruff to support its contention that an agreement to indemnify is implied, regardless of the circumstances, including the indemnitee's own negligence. As already noted, Woodruff claims that *Blackford* would mandate indemnity from Barrick even if Barrick were only one percent negligent.

We first note that this court decided *Blackford* on a motion to dismiss, stating "what the proofs may be we have no way of knowing and no occasion to decide." 254 Iowa at 849, 118 N.W.2d at 562.

We do not believe *Blackford* should be read to require indemnity in every service contract, as Woodruff suggests. To do so would mean that we embrace the view which is characterized as the "small minority" among states which have considered the issue. *See* Larson, § 76.71, at 14–707 and 709. (Professor Larson apparently reads *Blackford* as having adopted this minority view, although we are not that certain under the limited context in which that case was presented.)

In any event, to the extent *Blackford* may be read as holding that an implied agreement to indemnify will be read into all service contracts, regardless of the circumstances, and without regard to the fault of the proposed indemnitee, it is hereby expressly overruled.

We believe the district court correctly denied the claim for indemnity and therefore affirm.

AFFIRMED.