Daniel THORNTON, Appellee,

v.

GUTHRIE COUNTY RURAL
ELECTRIC COOPERATIVE
ASSOCIATION, Appellant.

GUTHRIE COUNTY RURAL
ELECTRIC COOPERATIVE
ASSOCIATION, Appellant,

v.

BARHITE & LARSEN, INC., Appellee.

No. 89–1142.

Supreme Court of Iowa.

Feb. 20, 1991.

Rehearing Denied April 16, 1991.

As Amended April 22, 1991.

Gregory R. Brown, Hugh J. Cain, Thomas G. Fisher, Jr., and Stephen E. Eckley of Duncan, Jones, Riley & Finley, P.C., Des Moines, for appellant.

John P. Whitesell, Iowa Falls, for appellee Daniel Thornton.

James E. Walsh, Jr. and Paul W. Demro of Clark, Butler, Walsh & McGivern, Waterloo, for appellee Barhite & Larsen, Inc.

Considered by HARRIS, P.J., and LARSON, SCHULTZ, CARTER, and LAVORATO, JJ.

HARRIS, Justice.

Who must bear the burden of damages for a severely injured construction worker: his employer, an electrical construction contractor or the utility for which the work was being performed? The trial court fixed responsibility with the utility. We think the responsibility must rest with the construction company.

Plaintiff Daniel Thornton was employed as a construction laborer by Barhite & Larsen, Inc. (B & L). B & L is an electrical contractor which specializes in installing underground electric systems. Defendant Guthrie County Rural Electric Cooperative Association (the co-op) contracted with B &

L to replace underground cable in the Lake Panorama area.

It was obviously important to de-energize the electrical lines during construction and the co-op agreed to do so. The jury found B & L to be negligent and its negligence to be the proximate cause of plaintiff's injuries. The jury fixed Thornton's damages at $400,000, an amount not challenged on appeal.

The co-op admitted its own negligence and proximate cause, then cross-petitioned against B & L, alleging B & L was negligent and required to indemnify the co-op in accordance with provisions in the contract between the co-op and B & L. When the case was tried to a jury the parties agreed that the court would decide the indemnity claims following the jury verdict.

The co-op's negligence claims against B & L proceed from a provision in the contract:

Section 1. *Protection to persons and property.* The bidder [B & L] shall at all times take all reasonable precautions for the safety of employees on the work and of the public, and shall comply with all applicable provisions of federal, state, and municipal safety laws and building and construction codes, *as well as the safety rules and regulations of the owner* [the co-op].

(Emphasis added.) The co-op's operational procedures stated:

In the following rules: SHOULD is recommended. SHALL is mandatory.

1. Insulated hardhats and safety glasses SHALL be worn at all times.

2. Rubber gloves SHALL be worn when making all connections on cables.

3. Circuits SHALL be opened and closed during approved live line tools.

4. Cable locating, cable testing and fault finding SHALL be undertaken only by a person or persons familiar with the system and qualified to operate the equipment in a safe manner.

In addition, the operating procedures included the following instruction:

The workman is likely to be at ground potential at all times, from contact with the earth or grounded equipment; therefore, special precautions are necessary to avoid electrical shock.

There was evidence that B & L did not follow safety procedures. Thornton's crew superintendent testified B & L did not train its workers in handling "hot lines or lines of electricity." He also testified B & L did not provide him or Thornton with a copy of B & L's operating procedures.

Jim Barhite, the principal owner of B & L, admitted he did not do anything to make sure his employees followed the operating procedures of the co-op. Consulting engineers testified to a number of safety violations, including that rubber gloves should have been worn and that the lines should have been grounded. At least three safety standards of the national electrical safety code were violated. Plaintiff himself testified that B & L did not provide training with regard to the handling of electric lines.

B & L's posttrial motion for judgment notwithstanding the verdict was sustained. The trial court determined that the co-op was the sole party responsible for Thornton's injuries. The court rejected the co-op's indemnification claim on two grounds, only one of which is defended on appeal: a finding that B & L was not negligent.

I. B & L's safety violations, required by the contract, amounted to negligence. *Giarratano v. Weitz Co.*, 259 Iowa 1292, 1305, 147 N.W.2d 824, 832 (1967) ("where a contract imposes a duty ... neglect of that duty is a tort and an action ex delicto will lie"). There was ample evidence to support the jury's finding that B & L was negligent and that its negligence was a proximate cause of Thornton's injuries.

B & L nevertheless contends that, notwithstanding evidence of its safety violations, the accident had only to do with the co-op's negligence in energizing the line. B & L argues its construction activities are strictly limited to nonenergized lines, and its employees are only trained accordingly. The gist of the contention is that B & L could not be charged with negligence in failing to observe safety precautions for its employees because it could count on the

lines being de-energized. In accepting this contention in its posttrial ruling the trial court relied heavily on the following provision in the contract:

3. *Work on energized lines.* Unless stated below all construction work including attachments to existing poles and line changes, is to be done with the lines deenergized. The hours during which existing lines will be deenergized are shown in the contractor's proposal. Approximately *0* miles of the lines changes are to be made with the lines energized and such lines are in the following location or areas: ... and are more fully described in the plans, specifications and contractor's proposal. For work in these locations the bidder must provide personnel capable of working on energized lines. All such work shall be performed to meet at least the safety rules and regulations prescribed by the owner for its employees including the use of rubber gloves, hot sticks and associated protective equipment, a copy of which rules and regulations may be examined at the office of the owner.

■ Judgment notwithstanding the verdict was not warranted unless B & L's position was established as a matter of law. The appropriate scope of review for judgments notwithstanding the verdict is well settled. The judgment should be entered only if there is no substantial evidence to support the verdict. *Suss v. Schammel,* 375 N.W.2d 252, 255 (Iowa 1985).

■ We cannot agree that the evidence and the contractual provision regarding the de-energized line established the point in B & L's favor as a matter of law. The record does not establish that lines which are supposed to be—even required to be—de-energized can be assumed to be free from danger. Much in addition to common experience suggests otherwise. The safety precautions required by the contract are a strong indication that the parties were well aware that the lines might some way become energized, otherwise there would have been no need for the precautions.

The trial court's determination that B & L was not negligent as a matter of law was in error.

II. The trial court rejected the indemnity claim against B & L on the same ground (there was no evidence to support the jury's finding that B & L was negligent). Because we have rejected this holding we must now determine whether the co-op is otherwise entitled to indemnity.

The indemnity claim is grounded in this provision:

To the fullest extent permitted by law, bidder [B & L] shall indemnify and hold harmless owner [the co-op] and engineer and their consultants, agents and employees from and against all claims, damages, losses and expenses, including but not limited to, attorneys fees whether incurred prior to or during litigation, administrative hearings, arbitration, or bankruptcy proceedings, including trial and appellate levels, arising out of or resulting from the performance of work, provided that any such claim, damage, loss, or expense is either (1) caused in whole or in part by any negligent act or omission of the bidder, any subcontractor, anyone directly or indirectly employed by any of them or anyone for whose acts any of them may be liable, regardless of whether or not it is caused in part by a party indemnified hereunder....

■ Our cases recognize that there is something anomalous in seeking indemnity from another for damages resulting from one's own negligence. We look upon provisions calling for indemnity under these circumstances with some disfavor. We have said:

The general rule is that an indemnity agreement will not be construed to relieve the indemnitee from the effect of its own negligence unless the agreement provides for it in "clear and unequivocal" language.

*Payne Plumbing & Heating Co., Inc. v. Bob McKiness Excavating & Grading, Inc.,* 382 N.W.2d 156, 160 (Iowa 1986). On the other hand we have long recognized that a sufficiently clear contractual provi-

sion for indemnity is enforceable, even when it applies to the indemnitee's own negligence. *Id.* In *Payne,* we enforced a provision which was worded nearly the same as the one involved here. *Id.* We think the provision in the contract between the co-op and B & L is clear and unequivocal. Like the one in *Payne* it is nearly all embracing.

 B & L asserts that the indemnity provision is rendered ambiguous or equivocal (thus rendering it unenforceable) by the existence of a separate hold-harmless provision in an earlier contract between the parties. The hold-harmless provision in the earlier contract lacked any language, such as appeared in the later provision we have quoted, which would indicate the duty to indemnify attaches even in the event of the co-op's own negligence. B & L seizes on the earlier provision to present two alternative contentions. It argues first that the earlier contract (with its equivocal hold-harmless provision), and not the second one (with its unequivocal indemnity clause), was to apply to work on underground lines, the work Thornton was performing when he was injured. We however find nothing in the record to support such a contention. Our reading of the later contract convinces us that its provisions address the construction of both overhead and underground lines.

B & L uses the earlier hold-harmless provision for a second attack. It contends the existence of two indemnity provisions, one equivocal (the earlier one) and one unequivocal (the later one) renders the matter ambiguous and equivocal thus unenforceable under *Payne Plumbing & Heating.* The difficulty with this contention is that we do not have two existing provisions. The second, unequivocal, provision was a part of a later agreement by which the parties amended the earlier one. We think the later indemnity provision did not join the original hold-harmless clause; it supplanted it.

We are led to conclude that the trial court should have entered judgment for the co-op on its indemnity claim in accordance with the jury verdict. Judgment notwithstanding the verdict was entered in error.

 III. Error is claimed on the trial court's interest award which included prejudgment interest for future damages. Half of the $400,000 award was specifically found by the jury to be damages accruing after the date of the verdict. In *Mercy Hospital v. Hansen, Lind & Meyer,* 456 N.W.2d 666, 674 (Iowa 1990) (which, like the present case, interpreted Iowa Code section 535.3 as it existed prior to the 1987 amendment) we approved assessment of interest on future damages from commencement of suit. That is what the trial court did here. Our holding in *Mercy Hospital,* filed after the briefs were filed in this appeal, ratified the trial court's ruling on interest. There was no error in allowing interest on future damages from commencement of suit.

IV. Other contentions are rendered moot by the foregoing determinations. The co-op tentatively challenged, on equal protection grounds, the effect of the comparative fault Act if it should be denied recovery on the indemnity claim. As the co-op points out, this contention is moot because we have determined the indemnity claim to be valid. B & L, which did not cross-appeal, asked that two discretionary evidentiary rulings be reversed in the event of retrial on remand. Under our holding there will be no need for retrial.

The judgment of the trial court must be reversed and the case remanded for entry of judgment in favor of Thornton against the co-op on his petition and in favor of the co-op and against B & L on the cross-petition. The trial court is affirmed on its award of interest.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.