McNALLY & NIMERGOOD, United National Insurance Company, and Assicurazioni Generali S.P.A., Appellants,

v.

**NEUMANN–KIEWIT CONSTRUCTORS, INC., Appellee.**

No. 00–0550.

Supreme Court of Iowa.

July 17, 2002.

William J. Koehn and Debra Recten-baugh Pettit of Davis, Brown, Koehn, Shors & Roberts, P.C., Des Moines, for appellants.

Jeffrey L. Goodman and Kurt S. Peterson of Pingel & Templer, P.C., West Des Moines, for appellee.

CADY, Justice.

The primary issue we confront in this case is whether a settlement by a lessor of a personal injury action by an employee of the lessee based solely on allegations of the lessor's own negligence precludes recovery in a subsequent action by the lessor for contractual indemnification against the lessee. We conclude the settlement precludes indemnification under the facts of this case. We affirm the order by the district court granting summary judgment.

## I. Background Facts and Proceedings.

The facts of this case date back to 1994 when Neumann–Kiewit Constructors, Inc. (Neumann), a joint venture formed by Neumann Brothers, Inc. and Kiewit Construction Company for the purpose of constructing the Employers Mutual Casualty Insurance Company building in downtown Des Moines, leased a 150–ton crawler crane from McNally & Nimergood (McNally). McNally is a Michigan corporation, and Neumann needed the crane to assist in the construction of the building. The lease was a "bare rental," which meant the crane was leased without an operator.

The terms of the lease were developed by the parties through an exchange of their respective form agreements. McNally initiated the process when it sent Neumann its form lease agreement. The lease required Neumann to pay McNally $6000 a month for the use of the crane, and covered a twelve-month period. McNally was authorized to adjust the monthly payments if Neumann did not need the crane for the full twelve months. The agreement also included the following provisions:

C. ... Lessee shall be responsible for normal maintenance and for repair of any damage incurred....

D. INSURANCE AND LIABILITY OF LEASEE: ... Lessee assumes full responsibility for and indemnifies Lessor against and will protect and save Lessor against harm from any and all loss, liability, damage, and expense in connection with any injury or claim of injury of Lessee's employees and will save Lessor harmless from any and all loss, liability, damage, and expense to other persons or any property arising from or in connection with the use or operation of the leased equipment. . . .

The McNally lease agreement was dated August 25, 1994. It was signed by an authorized representative of McNally.

After receiving the McNally lease agreement, Neumann sent McNally its own form rental agreement. Like the McNally lease, the lease rate was $6000 a month, but the term was designated to be between ten and twelve months, with no adjustments in the monthly rate. The rental agreement also included the following provisions:

[B.] (iii) DAMAGES. Lessee shall be liable for any and all damage to any persons or property while said equipment is in Lessee's possession, except for damage caused by defects in the equipment.

. . . .

G. ATTORNEY'S FEES. In the event either party institutes suit in court against the other party in connection with any dispute or matter arising under this Agreement, the prevailing party shall be entitled to recover a reasonable attorney's fee in addition to any other relief granted by the court.

H. FULL AGREEMENT. The agreement constitutes the full and complete understanding between the parties. . . .

The agreement also required Neumann to inspect and examine and replace or repair the crane if not found in good condition. It further required Neumann to keep the crane in good repair. '

The unsigned rental agreement included a one-page attachment containing additional provisions. These documents were sent with a cover letter to McNally stating, "Enclosed is our rental agreement and attachments." The letter requested McNally to "sign both the rental agreement and attachments and return them to us for final execution." The lease agreement was also enclosed with the letter. It contained several handwritten changes made by Neumann. Like the rental agreement, the lease agreement was not signed by Neumann.

An authorized representative of McNally signed the rental agreement and returned the documents to Neumann. An authorized representative of Neumann then signed the rental agreement. Neumann, however, did not sign the lease agreement.

The crane was subsequently delivered by McNally to the construction site of the Employers' Mutual Insurance Company building in Des Moines. On November 28, 1994, William Lawson, Jr., an employee of Neumann, was seriously injured while erecting a tower crane needed to construct the building. The accident occurred when Lawson's arm was pinched between an erected section of the tower crane and another section of the tower crane that was being hoisted into place with the crawler crane.

Lawson brought an action against Neumann and McNally for the injuries he sustained. He claimed Neumann was negligent in failing to inspect the crawler crane, failing to maintain and service the crane, and failing to properly operate the crane. Lawson claimed McNally was negligent in failing to inspect the crawler crane prior to its delivery, failing to properly maintain the crane prior to its delivery, and delivering a crane with a defective pump.

However, McNally asserted as an affirmative defense that Neumann was negligent and that the negligence of Neumann was a superceding cause of Lawson's injury. The district court subsequently dismissed the action against Neumann. It determined that recovery against Neumann was limited to workers' compensation benefits. The case proceeded to trial against McNally.

After four days of trial, Lawson and McNally settled the claim for $499,000. The settlement agreement released McNally from liability, but did not release Neumann. No liability was admitted by McNally and McNally did not give up any subsequent remedies.

Following the settlement, McNally made repeated demands on Neumann for indemnification under the lease agreement. After Neumann declined to reimburse McNally for the settlement, McNally filed an action against Neumann for indemnification. The petition was filed on August 25, 1998.

McNally claimed both the rental agreement and the lease agreement combined to form the terms of the parties' complete agreement, which included the duty of Neumann to provide indemnification. McNally claimed indemnification was also provided under the damage clause in the rental agreement based on the language that made Neumann "liable for any and all damage to any persons or property while said equipment is in Lessee's possession, except for damage caused by defects in the equipment." It claimed indemnification was required by the lease agreement under the "INSURANCE AND LIABILITY OF LESSEE" clause providing that Neumann assume "full responsibility for and indemnifies Lessor against and will protect and save Lessor against harm from any and all loss, liability, damage, and expense in connection with any injury or claim of injury of Lessee's employees." In addition to the expressed contractual obligations for indemnification, McNally claimed the duties under both agreements requiring Neumann to inspect, maintain and repair the crane also formed the basis for implied indemnification.

On October 12, 1999, Neumann moved for summary judgment. It asserted the agreement between the parties was limited to the terms of the signed rental agreement, which excluded indemnification for damages caused by defects in the equipment and was not broad enough to require indemnification for McNally's own acts of negligence.

The district court granted summary judgment. It found the parties' agreement was confined to the rental agreement under the integration clause. It determined this agreement did not provide for indemnification for McNally's own negligence. The district court also awarded Neumann attorney fees for defending the indemnification claim of $77,828.50.

McNally appeals. It claims summary judgment was improper because a factual dispute exists over the scope of the parties' written agreement. Additionally, McNally asserts that it does not seek indemnification for liability based on its own negligence or for any defect in the crane which existed prior to delivery, but seeks indemnification based on the breach of Neumann's contractual promise to indemnify it for Neumann's own acts of negligence. McNally claims both the expressed and implied contracts require Neumann to indemnify it for the settlement it paid to Lawson as long as it can show Neumann was negligent and that Neumann's negligence was a cause of the injury. McNally argues that it is entitled to a trial to make this showing. It also argues the trial court abused its discretion in awarding the amount of attorney fees to Neumann for defending the action.

## II. Standard of Review.

We review the grant of a summary judgment motion for errors at law. *McComas–Lacina Constr. Co. v. Able Constructors*, 641 N.W.2d 841, 843 (Iowa 2002). In reviewing the district court's decision, we consider the evidence presented in a "light most favorable to the party opposing the motion...." *Id.* We will uphold the grant of summary judgment if the district court correctly applied the law to find a lack of a genuine issue of material fact. *Id.* We review an award of attorney fees for an abuse of discretion. *Olson v. Nieman's, Ltd.*, 579 N.W.2d 299, 316 (Iowa 1998).

## III. Indemnification.

██ "Indemnification is a form of restitution...." *Iowa Elec. Light & Power Co. v. Gen. Elec. Co.*, 352 N.W.2d 231, 236 (Iowa 1984). It can be implied by law in tort claims to shift liability for an obligation to the party who should bear ultimate responsibility for it under principles of equity, or it can be based on contract. *See Hansen v. Anderson, Wilmarth & Van Der Maaten*, 630 N.W.2d 818, 823 (Iowa 2001); *Farmers Coop. Co. v. Stockdales' Corp.*, 366 N.W.2d 184, 186 (Iowa 1985). In the absence of a duty imposed by law to indemnify another, there is no right to indemnification unless derived from a contract. *See Haynes v. Kleinewefers & Lembo Corp.*, 921 F.2d 453, 456 (2d Cir. 1990).[1] In this case, the grounds for indemnification asserted by McNally are limited to contract. It asserts a contract for indemnification was implied by the parties in its written rental and lease agreements, as well as expressed. We first

consider the claim of express contract for indemnification.

## IV. Express Contract for Indemnification.

██ Under a contract for indemnification, "one party (the *indemnitor*) promises to hold another party (the *indemnitee*) harmless for loss or damage of some kind...." II E. Allan Farnsworth, *Farnsworth on Contracts* § 6.3, at 108 (2d ed.1998). The indemnitor "promises to indemnify ... [the] indemnitee against liability of [the] indemnitee to a third person, or against loss resulting from [the] liability." 42 C.J.S. *Indemnity* § 2, at 72 (1991). Generally, no particular language is required to support indemnification, and a written agreement can be established without specifically expressing the obligation as indemnification. *See Jenckes v. Rice*, 119 Iowa 451, 452–53, 93 N.W. 384, 385 (1903); *see also Royal Ins. Co. of Am. v. Whitaker Contracting Corp.*, 242 F.3d 1035, 1041 (11th Cir.2001) (particular language not required as long as intent is clear). An indemnification agreement is created when the words used express an intention by one party to reimburse or hold the other party harmless for any loss, damage, or liability. Robert L. Meyers III & Debra A. Perelman, Symposium, *Risk Allocation Through Indemnity Obligations in Construction Contracts*, 40 S.C. L.Rev. 989, 990 (1989) [hereinafter Meyers & Perelman]. Intent is the controlling consideration. *See Bunce v. Skyline Harvestore Sys., Inc.*, 348 N.W.2d 248, 250 (Iowa 1984); Meyers & Perelman, 40 S.C. L.Rev. at 989. Indemnification is commonly utilized in construction contracts

---

**1.** Tort-based indemnity has been recognized in Iowa under four circumstances. They are: vicarious liability, liability based on conduct directed by the indemnitor, liability based on the breach of an independent duty of care owed by the indemnitor, and liability based on the failure of the indemnitor to discover or prevent misconduct. *Hansen*, 630 N.W.2d at 823; *Farmers Coop. Co.*, 366 N.W.2d at 186; *C.F. Sales, Inc. v. Amfert, Inc.*, 344 N.W.2d 543, 553–54 (Iowa 1983).

and rental agreements, as well as many other relationships where one party engages in an act at the request of the other or for the benefit of the other, or allows a party to use property belonging to the other. *See* Meyers & Perelman, 40 S.C. L.Rev. at 990–91; 42 C.J.S. *Indemnity* §§ 1, 2, at 72.

■■■ A contract for indemnification is generally subject to the same rules of formation, validity and construction as other contracts. *Evans v. Howard R. Green Co.,* 231 N.W.2d 907, 916 (Iowa 1975). However, we have crafted a special rule of construction for indemnification contracts when the contract is claimed to relieve the indemnitee from liability for its own negligence. This rule provides that indemnification contracts will not be construed to permit an indemnitee to recover for its own negligence unless the intention of the parties is clearly and unambiguously expressed. *See McComas–Lacina Constr. Co.,* 641 N.W.2d at 845; *Sears, Roebuck & Co. v. Poling,* 248 Iowa 582, 588, 81 N.W.2d 462, 465 (1957). It is also the prevailing rule in other jurisdictions. *United States v. Seckinger,* 397 U.S. 203, 211, 90 S.Ct. 880, 885, 25 L.Ed.2d 224, 233 (1970). The traditional reluctance of courts to allow the burden of one who is negligent to be transferred to another who is not at fault, especially where there is a disparity in the bargaining power and economic resources of the parties, can be traced to public policy considerations. *Id.* at 212, 90 S.Ct. at 885, 25 L.Ed.2d at 233. Thus, indemnification contracts claimed to contain these provisions are construed more strictly than other contracts. *Exide Corp. v. Millwright Riggers, Inc.,* 727 N.E.2d 473, 482 (Ind.Ct.App.2000); *Amoco Prod. Co. v. EM Nominee P'ship,* 2 P.3d 534, 541 (Wyo.2000).

■■■ This principle of construction must be considered in this case because the legal claims for damages paid by McNally in settlement were based solely on the allegations of its own negligence. Neumann claims our strict rule of construction does not allow the contract to be interpreted to require it to indemnify McNally for its own negligence.

For purposes of summary adjudication, we will consider the indemnification clauses in both the lease agreement and the rental agreement together. The lease agreement was broad and all-inclusive. It provided for indemnification for all damage claims "arising from or in connection with the use or operation of the [crane]." The rental agreement also broadly encompassed liability for all damage "while [the crane was] in [the] Lessee's possession," but specifically excluded "damage caused by defects in the equipment."

Since the time we first recognized our rule of construction against indemnification for the indemnitee's own negligence unless the intention to do so is clearly and unequivocally expressed, we have tended to apply the rule by distinguishing contracts permitting indemnification for the indemnitee's own negligence from those that do not by looking for specific language in the contract addressing the fault or negligence of the indemnitee. *See Employers Mut. Cas. Co. v. Chicago & N.W. Transp. Co.,* 521 N.W.2d 692, 694 (Iowa 1994) (indemnitor agrees to indemnify the railroad " 'from any and all claims . . . even though the operation of the Railway Company's railroad may have caused or contributed thereto' "); *Thornton v. Guthrie County Rural Elec. Coop. Ass'n,* 467 N.W.2d 574, 576–77 (Iowa 1991) (indemnification imposed " 'regardless of whether [damages were] caused in part by [the indemnitee]' "); *Payne Plumbing & Heating Co. v. Bob McKiness Excavating & Grading, Inc.,* 382 N.W.2d 156, 160 (Iowa 1986) (indemnitor agreed to indemnify indemnitee *" 'regardless of whether or not [damage] is*

*caused in part by [the indemnitee]'"*). Thus, we have permitted indemnity based on the indemnitee's own negligence when the indemnitee's own negligence is specifically addressed in the indemnification agreement. On the other hand, general indemnity language in a contract has been deemed insufficient to impose indemnity for the indemnitee's own negligence. *See Trushcheff v. Abell–Howe Co.*, 239 N.W.2d 116, 134 (Iowa 1976) (" 'Sub-Contractor will indemnify ... the General Contractor and the Owner from and against ... all claims ...' " caused by or growing out of " 'the work to be performed under this contract regardless of whether such claim is alleged to be caused ... by negligence ... of the Sub–Contractor....' "); *Evans*, 231 N.W.2d at 915–16 (" 'In the event of any suit against the Owner ... *on account of any ... act or omission of the Contractor*, the Contractor ... shall pay ... any judgments ... or settlements.' ").

However, the distinction between contracts that explicitly mention the indemnitee's own fault or negligence and those that do not was never intended to create a fixed limitation on our rule of construction. We have long recognized that indemnity contracts do not need to expressly state that the indemnitee will be indemnified for its own negligence if the clear intent of the contractual language provides for such indemnification. *See Weik v. Ace Rents Inc.*, 249 Iowa 510, 515, 87 N.W.2d 314, 317–18 (1958). More recently, we emphasized that "the contract need not expressly relieve the indemnitee of its own negligence if the words of the agreement clearly import that intent." *Herter v. Ringland–Johnson–Crowley Co.*, 492 N.W.2d 672, 674 (Iowa 1992). Thus, our rule of construction does not actually require the contract to specifically mention the indemnitee's negligence or fault as long as this intention is otherwise clearly expressed by other words of the agreement. *See id.* Moreover, our tendency to find general, all-inclusive indemnification contracts to be insufficient to create indemnity for an indemnitee's own negligence is only a guideline, not a strict principle. *See Evans*, 231 N.W.2d at 916 (broad and all-inclusive language is generally insufficient to show intent to indemnify for an indemnitee's own negligence). To hold otherwise would, in effect, mean that the contract would need to contain a specific reference to the indemnitee's own negligence before such indemnification would be permitted. *See Hader v. St. Louis Southwestern Ry.*, 207 Ill.App.3d 1001-1012, 152 Ill.Dec. 859, 865-86, 566 N.E.2d 736, 742–43 (1991). This is not our rule. In fact, those justifications that helped establish our rule against indemnity for an indemnitee's own negligence do not always reveal which party actually needs protection from its own bargain, at least in the type of commercial transaction at issue in this case where parties may freely choose to allocate risk arising from their transaction without regard to fault. *See Reliance Ins. Co. of Ill., Inc. v. Richfield Hospitality Servs., Inc.*, 92 F.Supp.2d 1329, 1336 & n. 6 (N.D.Ga.2000). In each case, the intent of the parties will control as revealed by the language of the agreement, and we should not impose any special requirement that specific language be used to express that intent. Thus, even broad indemnity language may reveal an intent to indemnify an indemnitee for its own negligence. *See id.* at 1335–36; *N.P.P. Contractors, Inc. v. John Canning & Co.*, 715 A.2d 139, 142 (D.C.1998).

Nevertheless, the rental agreement specifically addressed the issue of causation by excluding indemnification for "damage[s] caused by defects in the equipment." Thus, even if the broad lease provisions were construed to provide for indemnification without regard to fault, the language in the rental agreement, which both parties agree was part

of the contract, expressed the clear intention of the parties that Neumann would have no obligation to indemnify McNally if damage was the result of a defect in the crane. This specific clause trumps the general clause. The only purpose of this exclusion would be to express the intent for Neumann to be responsible for all damages, regardless of the cause, except those damages relating to a defect in the crane. Thus, the contract entered into by the parties expressed a clear intent for McNally to be indemnified for its own negligence, unless that negligence was based on or attributable to a defect in the crane. The defect exclusion would also apply to any negligence of McNally that was responsible for the existence of a defect, such as the failure to inspect the crane for defects prior to its delivery and a failure to maintain the crane free from defects prior to its delivery. In such instances, the defect remains the ultimate cause of the injury and makes the failure to inspect and maintain actionable.

Consequently, it is not important to our analysis to decide whether the indemnification clause was limited to the terms of the rental agreement or also included the terms of the lease agreement. Even assuming the district court improperly limited the contract to the terms of the rental agreement, the additional terms of the lease agreement do not impact the analysis. The parties contracted for indemnity under both agreements, but not in the event the damage resulted from a defect in the crane.

## V. Implied Contractual Indemnification.

■■■ McNally further claims there is an implied contract for indemnity based on the duties imposed on Neumann in the lease and rental agreements to maintain the crane in good condition and to notify McNally in the event the crane is not in good condition. McNally asserts the breach of these contractual duties by Neumann forms a basis for indemnification for the settlement amount paid to Lawson in this case.

■■■ Like other contracts, a contract for indemnification can be expressed or implied. It can be implied when the parties have entered into a contract that imposes an independent duty that implies a mutual intent to indemnify for liability or loss resulting from a breach of the duty. See Johnson v. Interstate Power Co., 481 N.W.2d 310, 319–20 (Iowa 1992); Woodruff Constr. Co. v. Barrick Roofers, Inc., 406 N.W.2d 783, 785 (Iowa 1987). Thus, we have held that a service contract or a sale and purchase contract alone is insufficient to imply indemnification for a loss. Johnson, 481 N.W.2d at 321; Woodruff Constr. Co., 406 N.W.2d at 787. However, the imposition of certain duties within a service or sales contract may imply an obligation for indemnification of a loss, such as the duty to inspect, perform necessary repairs, or install necessary safety devices. See Johnson, 481 N.W.2d at 319.

In this case, both the lease agreement and the rental agreement imposed independent duties on Neumann to maintain the crane in good condition, and the rental agreement additionally required Neumann to notify McNally of any damage to the crane. Considering the nature of the agreement, these are the types of duties that we have recognized can give rise to an implied obligation to indemnify for a loss. See id.

■■■ Notwithstanding, even if indemnification is implied by virtue of an independent duty imposed on Neumann under the lease or rental agreement, the terms of the implied agreement for indemnification would not include indemnification for the indemnitee's own negligence, such as a defect in the crane. Consistent with the rule of construction for expressed con-

tracts, there can be no indemnification based on the indemnitee's own negligence absent a clear intent. *See Herter,* 492 N.W.2d at 674. Instead, implied indemnification only involves liability based on the breach of an independent duty by the indemnitor. *See Johnson,* 481 N.W.2d at 319; *Woodruff Constr. Co.,* 406 N.W.2d at 785–86. The indemnity that is implied is indemnity for the loss or liability incurred by one party to the contract as a result of the other party's breach of a particular duty under the contract. Thus, a claim for indemnification based on a defect in the crane would be, like the express contract claim in this case, outside the scope of a claim for implied indemnification. It is unrelated to the breach of a duty by the indemnitee and does not express a clear intent to indemnify the indemnitee based on the imposition of liability for its own negligence.

## VI. Settlement of Underlying Claim.

■ McNally argues that it does not seek indemnification based on any damages resulting from a defect in the crane. Instead, it argues that it has evidence to establish that the damages sustained by Lawson resulted from Neumann's negligence in failing to properly maintain and operate the crane, which makes Neumann responsible for indemnification under the expressed agreement as well as its theory of implied indemnification. McNally asserts it is entitled to a trial to establish Neumann's negligence and its responsibility for indemnification.

Before beginning our analysis of this claim, we acknowledge the complexity of the law of indemnification and the challenges that can confront judges and lawyers in its application to particular factual circumstances. *See Woodruff Constr. Co.,* 406 N.W.2d at 785. Essentially, the historical complexity in this area of the law can be traced to the competing legal and equitable interests that give rise to the

doctrine, as well as an array of public policy considerations. Indemnity is a mix of contract and tort law, together with an array of equitable considerations. Thus, specific rules applicable to contractual indemnification may not neatly apply to other types of indemnification, and vice versa. *See Liberty Mut. Ins. Co. v. Pine Bluff Sand & Gravel Co.,* 89 F.3d 243, 247–48 (5th Cir.1996); *E.L. White, Inc. v. City of Huntington Beach,* 21 Cal.3d 497, 513, 146 Cal.Rptr. 614, 622, 579 P.2d 505, 510 (1978). Because of this, the basic concepts supporting indemnification must be placed at the forefront of our analysis, as well as the particular contract provisions at issue.

■ This case gives rise to two important and related concepts of indemnification. The first principle is that a party who seeks to establish a right to indemnity in an independent action must normally plead and prove it was liable to the injured party. *Ke–Wash Co. v. Stauffer Chem. Co.,* 177 N.W.2d 5, 9–10 (Iowa 1970). The rationale for this rule is tied to the fundamental concept that indemnity involves the shifting of responsibility of liability for loss from one who is legally responsible to another. *Id.* at 10. Thus, if an indemnitee had no liability for the loss in the inception, then any payment made by the indemnitee is considered purely voluntary and not subject to indemnification. *See id.* at 10–11. "Indemnity against loss[ ] does not cover loss[ ] for which [an] indemnitee is not liable to a third person...." 41 Am.Jur.2d *Indemnity* § 46, at 380 (1995).

■ The requirement to plead and prove liability established in *Ke–Wash* applies in independent actions for indemnity where the underlying claim for damages was settled without an adjudication of liability. *Ke–Wash Co.,* 177 N.W.2d at 11–12. Normally, a judgment in the underlying action will establish the essential liability to pursue indemnification. On the other

hand, a settlement does not constitute an adjudication of the issues of negligence with the injured party and does not, by itself, bar further adjudication on the merits of a claim against another party. *See Brosamle v. Mapco Gas Prods. Inc.*, 427 N.W.2d 473, 475–76 (Iowa 1988); *Buchhop v. Gen. Growth Props. & Gen. Growth Mgmt. Corp.*, 235 N.W.2d 301, 302 (Iowa 1975) (settlement of underlying claim for damages does not necessarily defeat right to indemnification). Thus, an indemnitee who settles the underlying claim must establish the existence of its liability to the injured party as an element of recovery for indemnification. *Ke–Wash Co.*, 177 N.W.2d at 11. Additionally, the indemnitee must establish the settlement was reasonable, and that the indemnitor had a duty to indemnify the indemnitee. *Id.*

The importance in this case of the rule that requires the indemnitee to be liable for the damages is brought to life by Neumann's argument that proof by McNally that it was liable for the loss or damage will defeat the claim for indemnity because the duty to indemnify under both claims for indemnification asserted by McNally does not cover liability or loss attributable to a defect in the crane or McNally's conduct relating to the defect. McNally responds that the rule requiring proof of liability is inapplicable to its claims of expressed or implied contractual indemnification and does not apply to claims for indemnity based solely upon Neumann's own negligence.

We specifically indicated in *Ke–Wash* that the need for the indemnitee to prove its liability to the injured party does not apply "where there is an expressed agreement for indemnification providing otherwise." *Id.* However, this exclusion was not intended as a blanket limitation for all claims based on expressed indemnification, but exists to recognize that express indemnification agreements can alter the common law rules on indemnity by calling for indemnification in the absence of underlying liability between the indemnitee and the injured party. *See* 42 C.J.S. *Indemnity* § 23(b), at 112 (rule that indemnity does not protect the indemnitee against loss through voluntary payments may be affected by the terms of the indemnification agreement). We specifically recognized this type of exclusion in *Ke–Wash,* where we cited *Robert & Company Associates v. Pinkerton & Laws Co.*, 120 Ga.App. 29, 31–32, 169 S.E.2d 360, 362–63 (1969), as an example of the express agreement exception. *See Ke–Wash Co.*, 177 N.W.2d at 11. In *Pinkerton,* the language of the express agreement revealed "it was the intention of the parties that Pinkerton should indemnify Robert & Company Associates irrespective of whether any claim arose by reason of the negligence of Robert & Company Associates, or for any reasons." *Robert & Co. Assocs.*, 120 Ga.App. at 32, 169 S.E.2d at 363.

Thus, the express indemnification exception recognizes that contract law can alter the common law concepts of indemnification, and impose obligations not otherwise supported by those equitable principles that drive noncontractual indemnification. On the other hand, if an expressed agreement does not reveal an intent to alter the rule against voluntary payment, the fundamental rule of liability for loss to the injured party applies, and the claim for indemnity must be viewed in its traditional form as shifting liability for a loss from one person who is legally responsible to another person.

We have previously determined in this case that the only limitation placed in the indemnification agreement was liability or loss based on a defect in the crane. However, there is no further indication the parties intended to alter the concept of indemnification by imposing a duty on Neumann to reimburse McNally in the

event McNally paid for the damages to an injured person when it was not liable to the injured person for the damages.

 Alternatively, McNally argues that the *Ke–Wash* rule against voluntary payments is a product of tort-based indemnification and was never intended to apply to implied contractual claims for indemnification, such as those claimed in this case. Thus, McNally argues that the rule in *Ke–Wash* does not apply to claims for implied indemnification based on the breach of independent duty arising from a contract.[2]

We agree with McNally that the rule against voluntary payment established in *Ke–Wash* arose from a tort-based claim for indemnity. *See Ke–Wash Co.*, 177 N.W.2d at 7–8. In *Ke–Wash*, a distributor of a defective product that caused damage to a consumer claimed its liability was secondary to the primary liability of the manufacturer. *Id.* at 7. We recognize vicarious liability to be one of the circumstances supporting a claim for indemnification based in tort. *Hansen*, 630 N.W.2d at 823. This type of claim is not contractual in nature, but is founded on the principles of equity derived from the vicarious aspect of the liability. Thus, we must determine if the *Ke–Wash* rule should be confined to the circumstances from which it arose. In fact, McNally suggests that the rule must be restricted to tort-based claims for indemnity because it would otherwise create an irreconcilable conflict with the claim for implied indemnity based on a breach of an independent duty recognized in *Woodruff*. This conflict is traced to the condition imposed in *Woodruff* that indemnification will only be implied when the indemnitee did not negligently contribute to the hazard. *Woodruff Constr. Co.*, 406 N.W.2d at 786. McNally argues that one rule of implied indemnity cannot require an indemnitee to establish its own negligence while another rule of implied indemnity prohibits indemnity when the indemnitee is negligent. McNally further asserts the conflict offends public policy because an indemnitee of an employer would never be able to settle with an injured employee of the employer.

We think the apparent conflict is resolved by recognizing that the implied indemnification adopted in *Woodruff* is not a broad concept. Instead, it is viewed as a remedy in those situations in which a breach of a duty imposed under a contract between the two parties caused injury to a third party for which the nonbreaching party was not primarily liable, but only secondarily liable. *See id.* at 785–86. We, of course, recognize indemnity based on vicarious or derivative liability in a tort setting, but a separate remedy is necessary when the source of the duty arises from a contract instead of tort and equitable principles. Thus, while the concept of shifting responsibility for loss from one who is secondarily liable to one who is primarily liable remains the same, the different source of the duty requires different theories of recovery.

 Accordingly, we discern no inconsistency between the general rule against

---

2. We have previously indicated that indemnification implied from the breach of an independent duty expressed in a contract is in the nature of a contract implied by law. *See Woodruff Constr. Co.*, 406 N.W.2d at 785. However, we recognize that the claim could properly be considered to be implied in fact. The claim is implied by the parties from the duty of care imposed in the contract. In any event, the implied indemnification we recognized in *Woodruff* is a contract-based right, based both on the intent of the parties and the underlying contract. *See id.* The intent to indemnify is implied from the underlying contractual duty. *See id.* Thus, the implied indemnification recognized in *Woodruff* cannot exist in the absence of a contract imposing a duty. *Id.* The underlying contract is never implied, only the intent to indemnify.

voluntary payments recognized in *Ke–Wash* and the rule limiting the implied indemnification concept recognized in *Woodruff* to indemnitees who did not aid in creating the hazard. An indemnitee can be liable to the injured party by operation of legal principles, yet not actually contribute to the hazard which caused the injury. In truth, we would create an inconsistency in our law if we adopted McNally's argument. We conclude the rule expressed in *Ke–Wash* applies to McNally's claim for implied indemnification asserted in this case.

■■■■ The second rule that comes into play in this case is that a claim for contractual indemnity must be covered by the contract. *See Ke–Wash Co.*, 177 N.W.2d at 11 (there must be "a duty on the part of the indemnitor to indemnify [an] indemnitee"). This rule seems simple enough, but it expresses an important fundamental principle, again based largely on the idea that indemnification involves reimbursement for liability or loss from one person to another. Absent specific provisions otherwise, an indemnitee must show the circumstance of the original claim asserted by the injured party that resulted in the liability or the loss by the indemnitee was covered by the contract of indemnification. *See Consolidated Rail Corp. v. Ford Motor Co.*, 751 F.Supp. 674, 676 (E.D.Mich.1990). In other words, the underlying action by the injured party must include a claim within the scope of the indemnification agreement. *See Hoffman Constr. Co. of Alaska v. U.S. Fabrication & Erection, Inc.*, 32 P.3d 346, 352 (Ala. 2001). This concept is consistent with our general rule that an indemnitee must show actual liability to recover against an indemnitor, and distinguishes indemnification contracts from other types of contracts to pay. *See Dana Corp. v. Fireman's Fund Ins. Co.*, 169 F.Supp.2d 732, 737–38 (N.D.Ohio 1999). *See generally* 41

Am.Jur.2d *Indemnity* § 4, at 349–50; 42 C.J.S. *Indemnity* § 4, at 76–77.

■■■ We have previously determined that the indemnification agreement in this case does not alter the requirement for McNally to show that it was liable to the injured party. Yet, the only limitation upon the shifting of liability from McNally to Neumann was that the injury resulted from a defect in the crane. In that situation, Neumann had no duty to indemnify McNally because it was not covered in the agreement. Conversely, any other circumstances were covered. Thus, to recover under the agreement, McNally would only be required to show its liability is not based upon a defect in the crane prior to delivery. If McNally was liable for other reasons, including Neumann's negligence, Neumann would have a duty to indemnify under the contract.

■■■ Generally, issues of liability presented in an indemnification action are not suitable for summary adjudication without a prior judicial determination of the issues. When an indemnitee settles the underlying action for damages, a subsequent action for indemnification normally requires a judicial determination of the issues raised in the case. However, the need for a hearing will ultimately depend upon the terms of the indemnification agreement and the scope of the allegations of the underlying claim by the injured party.

■■■■ In this case, the underlying claim that gave rise to McNally's liability or loss was restricted to allegations of McNally's own negligence. Moreover, those allegations of negligence were not covered under the indemnification contract. The indemnification contract specifically excluded liability based on defect. Thus, any liability that could have been imposed on McNally in the underlying action could only have been based on a de-

fect in the crane, which was a noncovered claim. Therefore, it is not enough that Neumann may have been negligent and that its negligence was covered under the agreement. Instead, McNally must show the loss it suffered or the liability it incurred was covered. Neumann's negligence could not have been the basis for McNally's liability under the allegations of the underlying action, and an indemnitee cannot transform the underlying claim by the injured party into a different lawsuit by making allegations of negligence against the indemnitor in a subsequent action for indemnity. When the underlying litigation settled by a potential indemnitee was limited to allegations of the indemnitee's own negligence not covered under the indemnification agreement, there can be no claim for indemnity because the amount paid in the settlement could only have been the result of the indemnitee's own noncovered negligence. *See Olin Corp. v. Yeargin Inc.*, 146 F.3d 398, 405 (6th Cir.1998) (no indemnification when settlement by indemnitee only pertains to its own liability); *Fifield v. S. Hill Ltd. P'ship*, 20 F.Supp.2d 366, 371–72 (D.Conn.1998) (when lawsuit by injured party is based solely upon independent negligence of the indemnitee, no contractual indemnification is available); *Gray v. Cleaning Sys. & Suppliers, Inc.*, 834 F.Supp. 123, 127–28 (S.D.N.Y.1993) (contract for indemnification that excludes liability based on indemnitee's own negligence is not applicable when indemnitee can only be liable to the injured employee of the indemnitor in the underlying action for damages if indemnitee was negligent).

■ We emphasize that the settlement of the underlying case by an indemnitee does not always constitute a waiver of the right to seek indemnification. *See Liberty Mut. Ins. Co.*, 89 F.3d at 248. Certainly, a n indemnitee should not lose any right to indemnification by settling the underlying claim rather than contesting it. *Heckart v.*

*Viking Exploration, Inc.*, 673 F.2d 309, 313 (10th Cir.1982). Yet, McNally is not denied indemnification in this case because it settled the underlying claim, but because the circumstances of the underlying claim were not covered by the indemnification agreement. In each case, the right to pursue an independent action for indemnification following a settlement will depend upon whether the circumstances of the indemnitee's liability for damages were covered in the agreement.

**VII. Attorney Fees.**

■ Finally, we address McNally's contention that the district court abused its discretion in setting the amount of attorney fees for Neumann in defending the action. The contract for indemnification in this case permitted Neumann to obtain reasonable attorney fees to compensate for the costs expended in defending the action for indemnification brought by McNally. Neumann initially requested $90,466.76 in attorney fees and $11,544.32 in additional expenditures. In exercising its discretion, the district court reduced the attorney-fee claim to $77,828.50 and rejected the claim for other expenses. Because we find the district court acted within its discretion in setting the amount of attorney fees to Neumann, we affirm the award of attorney fees by the district court.

**VIII. Conclusion.**

We conclude the settlement by an indemnitee of an underlying claim for damages based solely on the negligence of the indemnitee precludes indemnification under a contract that does not cover loss based on the indemnitee's own negligence. The district court properly granted summary judgment.

**AFFIRMED.**