Shawn COCHRAN, Plaintiff,

v.

GEHRKE CONSTRUCTION, National Tank Corporation, and Terracon Consultants, Inc., Defendants,

and

National Tank Corporation, Third–Party Plaintiff,

v.

Eagle Grove Crane Service, INC., Third–Party Defendant.

No. C 01–0161–MWB.

United States District Court, N.D. Iowa, Cedar Rapids Division.

Nov. 20, 2002.

---

Marc S. Harding, Marc S. Harding PC, Des Moines, IA, for Plaintiff.

Donald J. Pavelka, Jr., Thomas M. Braddy, Locher, Cellilli, Pavelka & Dostal, LLC, Omaha, NE, Megan M. Antenucci, Marc Thomas Beltrame, Whitfield & Eddy, PLC, Des Moines, IA, John A. Templer, Jr., Pingel & Templer, PC, West Des Moines, IA, Megan M. Antenucci, Marc Thomas Beltrame, Whitfield & Eddy, PLC, Des Moines, IA, Kent Alan Gummert, Gaudineer & Comito, LLP, West Des Moines, IA, for Defendants.

MEMORANDUM OPINION AND OR-DER REGARDING MOTIONS TO DISMISS OR PARTIALLY DIS-MISS NATIONAL TANK CORPO-RATION'S CLAIMS FOR INDEM-NITY AND CONTRIBUTION

BENNETT, Chief Judge.

## TABLE OF CONTENTS

I. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 994
 A. Factual Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 994
 B. Procedural Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 994

II. LEGAL ANALYSIS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 995
 A. Standards For Motions To Dismiss . . . . . . . . . . . . . . . . . . . . . . . . . . 995
 B. Eagle Grove's Motion To Dismiss The Third–Party Complaint . . . . . . . . . . . 996
 1. National Tank's third-party claims . . . . . . . . . . . . . . . . . . . . . . . . . . 996
 2. Arguments of the parties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 997
 3. Contribution versus indemnity . . . . . . . . . . . . . . . . . . . . . . . . . . . . 998
 4. National Tank's contribution claim . . . . . . . . . . . . . . . . . . . . . . . . 999
 5. National Tank's indemnity claim . . . . . . . . . . . . . . . . . . . . . . . . . . 1000
 a. Indemnity claims against the plaintiff's employer under Iowa law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1000
 i. Eighth Circuit precedent . . . . . . . . . . . . . . . . . . . . . . . . . . 1000
 ii. Iowa precedent . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1001
 b. Sufficiency of National Tank's indemnity claim . . . . . . . . . . . . . . . 1003
 i. The duties pleaded . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1003
 ii. Other implied duties . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1004
 iii. Other common-law theories of indemnity . . . . . . . . . . . . . . . . 1005
 C. Gehrke's Motion For Partial Dismissal Of The Cross–Claim . . . . . . . . . . 1006
 1. National Tank's Cross–Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1006
 2. Arguments of the parties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1006
 3. National Tank's Indemnity claim against Gehrke . . . . . . . . . . . . . . 1007

III. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1008

In a lawsuit following an accident during a construction project involving general, sub-, and sub-subcontractors, it was almost inevitable that the issues of indemnity and contribution would arise. Thus, it is not surprising that one of the subcontractors involved in this case has, indeed, brought such claims against the general contractor and its own subcontractor, nor is it surprising that the general contractor and sub-subcontractor—who was the plaintiff's actual employer—have both moved to dismiss or partially dismiss those claims. In consequence, the court must probe Iowa's sometimes arcane rules of indemnity and contribution as they are influenced by the State's comparative fault and workers' compensation laws.

## I. INTRODUCTION

### A. Factual Background

The factual background to the motions presently before the court is perhaps deceptively simple. The claims among the parties arise from a construction accident on July 20, 2000, during the erection and refurbishing of a water tower in New Providence, Iowa. The City of New Providence had hired Gehrke Construction as the general contractor for the project, and Gehrke, in turn, subcontracted with National Tank and Terracon to perform various parts of the contract. Specifically, Gehrke hired National Tank to perform some of the construction work and hired Terracon to provide soil compaction testing services. National Tank, in turn, hired Eagle Grove Crane Service to set up and operate the crane used in connection with the water tower project. Shawn Cochran was, in turn, an employee of Eagle Grove.

For the sake of simplicity, the court will rely for now on Shawn Cochran's allegations of what happened on July 20, 2000. Apparently while the water tank was being placed on the tower, Cochran alleges that "[t]he ground beneath the crane slowly sank, causing instability that [Cochran] was powerless to control," and "[t]he crane toppled, dropping [Cochran] approximately 140 feet to the ground below," with the result that Cochran was "critically injured." Plaintiff's Complaint at ¶¶ 10–12. This litigation followed.

### B. Procedural Background

On November 23, 2001, Shawn Cochran initiated this action by filing a Complaint against defendants Gehrke, National Tank, and Terracon, in which Cochran alleged that the negligence of the defendants caused his injuries. Defendant Terracon answered the Complaint on December 20, 2001, defendant Gehrke answered on February 1, 2002, and defendant National Tank answered on February 4, 2002. Cochran's Complaint, however, is not the subject of the motions to dismiss presently before the court.

Instead, the motions to dismiss involve cross-claims and third-party claims. On May 15, 2002, defendant Gehrke sought leave to amend its answer to assert a cross-claim against defendant National Tank for indemnification for damages to Cochran pursuant to a contract between National Tank and Gehrke. Similarly, on May 17, 2002, defendant National Tank sought leave to file a cross-claim against Gehrke and a third-party complaint against third-party defendant Eagle Grove for indemnity and/or contribution for damages and injuries claimed by Cochran. On May 22, 2002, a magistrate judge of this court granted Gehrke's motion to amend its answer to include its cross-claim against National Tank, and on June 10, 2002, the magistrate judge granted National Tank's motion to file its cross-claim against Gehrke and its third-party complaint against Eagle Grove. National Tank answered Gehrke's cross-claim on June 12, 2002.

However, on August 7, 2002, instead of answering National Tank's third-party

complaint, Eagle Grove moved to dismiss it, contending that National Tank's contribution or indemnity claim is barred by the exclusive remedy provision of Iowa's Workers' Compensation Act, and thus fails to state a claim upon which relief can be granted. Similarly, on August 15, 2002, Gehrke filed a partial motion to dismiss National Tank's cross-claim against it, arguing that the indemnity portion of the cross-claim fails to state a claim upon which relief can be granted, because the common-law theory of indemnity upon which National Tank relies has been abandoned by Iowa courts as incompatible with Iowa's Comparative Fault Act. National Tank resisted Eagle Grove's motion to dismiss its third-party complaint on August 26, 2002, and Eagle Grove filed a reply on September 6, 2002. After an extension of time to do so, National Tank resisted Gehrke's partial motion to dismiss its cross-claim on October 1, 2002.

Unfortunately, during much of the pendency of the present motions to dismiss, the case was not assigned to a presiding judge, owing to a judicial vacancy upon the elevation of Judge Michael Melloy to the Eighth Circuit Court of Appeals. However, following a status hearing before a magistrate judge on October 25, 2002, the undersigned agreed to preside over this case, as well as another case consolidated with this one for the purposes of discovery. Therefore, this case was assigned to the undersigned on October 28, 2002. As these matters are now ripe—indeed, over-ripe—for disposition, the court turns to the legal analysis of Gehrke's and Eagle Grove's motions to dismiss or partially dismiss National Tank's indemnity and contribution claims.

## II. LEGAL ANALYSIS

### A. Standards For Motions To Dismiss

The issue on a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is not whether a plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence in support of his, her, or its claims. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *United States v. Aceto Agric. Chem. Corp.,* 872 F.2d 1373, 1376 (8th Cir.1989). In considering a motion to dismiss under Rule 12(b)(6), the court must assume that all facts alleged by the complaining party, here National Tank, are true, and must liberally construe those allegations. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Gross v. Weber,* 186 F.3d 1089, 1090 (8th Cir.1999) ("On a motion to dismiss, we review the district court's decision de novo, accepting all the factual allegations of the complaint as true and construing them in the light most favorable to [the non-movant]."); *St. Croix Waterway Ass'n v. Meyer,* 178 F.3d 515, 519 (8th Cir.1999) ("We take the well-pleaded allegations in the complaint as true and view the complaint, and all reasonable inferences arising therefrom, in the light most favorable to the plaintiff."); *Gordon v. Hansen,* 168 F.3d 1109, 1113 (8th Cir.1999) (same); *Midwestern Machinery, Inc. v. Northwest Airlines,* 167 F.3d 439, 441 (8th Cir.1999) (same); *Wisdom v. First Midwest Bank,* 167 F.3d 402, 405 (8th Cir.1999) (same); *Duffy v. Landberg,* 133 F.3d 1120, 1122 (8th Cir.) (same), *cert. denied,* 525 U.S. 821, 119 S.Ct. 62, 142 L.Ed.2d 49 (1998); *Doe v. Norwest Bank Minn., N.A.,* 107 F.3d 1297, 1303–04 (8th Cir.1997) (same); *WMX Techs., Inc. v. Gasconade County, Mo.,* 105 F.3d 1195, 1198 (8th Cir.1997) (same); *First Commercial Trust v. Colt's Mfg. Co.,* 77 F.3d 1081, 1083 (8th Cir.1996) (same).

The court is mindful that in treating the factual allegations of a complaint as true pursuant to Rule 12(b)(6), the court must "reject conclusory allegations of law and

unwarranted inferences." *Silver v. H & R Block, Inc.,* 105 F.3d 394, 397 (8th Cir. 1997) (citing *In re Syntex Corp. Securities Lit.,* 95 F.3d 922, 926 (9th Cir.1996)); *Westcott v. City of Omaha,* 901 F.2d 1486, 1488 (8th Cir.1990) (the court "do[es] not, however, blindly accept the legal conclusions drawn by the pleader from the facts," citing *Morgan v. Church's Fried Chicken,* 829 F.2d 10, 12 (6th Cir.1987), and 5 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357, at 595–97 (1969)); *see also LRL Properties v. Portage Metro Hous. Auth.,* 55 F.3d 1097, 1103 (6th Cir.1995) (the court "need not accept as true legal conclusions or unwarranted factual inferences," quoting *Morgan,* 829 F.2d at 12). Conclusory allegations need not and will not be taken as true; rather, the court will consider whether the *facts* alleged in the complaint, accepted as true, are sufficient to state a claim upon which relief can be granted. *Silver,* 105 F.3d at 397; *Westcott,* 901 F.2d at 1488.

The United States Supreme Court and the Eighth Circuit Court of Appeals have both observed that "a court should grant the motion and dismiss the action 'only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *Handeen v. Lemaire,* 112 F.3d 1339, 1347 (8th Cir.1997) (quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)); *accord Conley,* 355 U.S. at 45–46, 78 S.Ct. 99 ("A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his [or her] claim which would entitle him [or her] to relief."); *Meyer,* 178 F.3d at 519 ("The question before the district court, and this court on appeal, is whether the plaintiff can prove any set of facts which would entitle the plaintiff to relief" and "[t]he complaint should be dismissed 'only if it is clear that

no relief can be granted under any set of facts that could be proved consistent with the allegations,'" quoting *Frey v. City of Herculaneum,* 44 F.3d 667, 671 (8th Cir. 1995)); *Gordon,* 168 F.3d at 1113 ("We will not dismiss a complaint for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts that would demonstrate an entitlement to relief."); *Midwestern Machinery, Inc.,* 167 F.3d at 441 (same); *Springdale Educ. Ass'n v. Springdale Sch. Dist.,* 133 F.3d 649, 651 (8th Cir.1998) (same); *Parnes v. Gateway 2000, Inc.,* 122 F.3d 539, 546 (8th Cir.1997) (same); *Doe,* 107 F.3d at 1304 (same); *WMX Techs., Inc.,* 105 F.3d at 1198 (same). The Rule does not countenance dismissals based on a judge's disbelief of a complaint's factual allegations. *Neitzke v. Williams,* 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). Thus, "[a] motion to dismiss should be granted as a practical matter only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief." *Frey v. City of Herculaneum,* 44 F.3d 667, 671 (8th Cir.1995) (internal quotation marks and ellipses omitted); *accord Parnes,* 122 F.3d at 546 (also considering whether there is an "insuperable bar to relief" on the claim).

### B. Eagle Grove's Motion To Dismiss The Third–Party Complaint

#### 1. National Tank's third-party claims

In its Third–Party Complaint, after identifying the parties, National Tank alleges the following as the basis for Eagle Grove's liability for indemnity and contribution:

5. Eagle Grove was responsible for the set up and operation of the crane that eventually fell during the erection of the water tower in New Providence,

Iowa. That accident is the subject of Plaintiff Cochran's claims in this action.

6. Eagle Grove, through its employees, was negligent in the set up of the crane in question.

7. Eagle Grove, through its employees, was negligent in the operation of its crane at the time of the accident.

8. Eagle Grove had inadequate safety procedures in place at the time of the attempted erection of the water tower in question.

9. The negligence of Eagle Grove was the proximate cause of the injuries and damages claimed by the Plaintiff in this action.

10. Defendant/Third–Party Plaintiff National Tank is entitled to contribution and/or indemnity from Eagle Grove, should Plaintiff prevail in this action. National Tank's Third–Party Complaint at ¶¶ 5–10. Based on these allegations, National Tank "prays for judgment for contribution and/or indemnity from Eagle Grove for any judgment that may be entered against it" in Cochran's action, plus costs and such other relief as the court deems appropriate. *Id.* at Prayer.

### 2. *Arguments of the parties*

In its motion to dismiss National Tank's Third–Party Complaint against it, Eagle Grove contends that National Tank seeks contribution or indemnity based upon Eagle Grove's alleged "negligence," but admits that Eagle Grove was plaintiff Cochran's employer at the time of the accident. Eagle Grove contends, however, that these allegations are insufficient to state a claim, because, under Iowa law, a third party cannot recover either contribution or indemnity from the employer of a person allegedly injured on the job by the negligent acts of both the third party and the employer. This is so, Eagle Grove argues, because Iowa law requires common liability for contribution or indemnity between joint tortfeasors, but common liability is not present when the employer's liability is pursuant to the workers' compensation laws. Eagle Grove also asserts that National Tank has alleged nothing more than negligent acts based on a "general duty," but such a general duty will not support indemnity where the would-be indemnitor is the injured person's employer. Similarly, Eagle Grove contends that Iowa law does not permit a third-party claim for contribution against an injured plaintiff's employer, because there is no common liability between the tortfeasors. Instead, Eagle Grove contends that its liability to Cochran is exclusively pursuant to the Iowa Workers' Compensation Act (IWCA), because Eagle Grove was Cochran's employer, but the IWCA is not the basis for any liability of National Tank.

In response, National Tank contends that Iowa law permits third-party claims against an injured plaintiff's employer for indemnity, because the IWCA's exclusive remedy provision stands as no bar to an indemnity action based upon an "independent duty" owed by the employer to the party seeking indemnity. In this case, National Tank contends that the oral contract it had with Eagle Grove included implied and independent duties on the part of Eagle Grove to perform its work safely and in a workmanlike manner, but that Eagle Grove breached these duties, giving rise to National Tank's claim for indemnity. National Tank also argues, almost in passing, that Eagle Grove owed National Tank an independent duty under other common-law theories: (1) National Tank has incurred liability by action at the direction, in the interest of, and in reliance upon Eagle Grove; (2) National Tank incurred liability merely because of failure, even though negligent, to discover or prevent the misconduct of Eagle Grove. Returning to its principal theme, National Tank argues that an implied duty of care exists in construction contracts under Iowa

law to complete work in a reasonably good and workmanlike manner; that National Tank hired Eagle Grove to set up and operate a crane to hoist the water tank into place on the New Providence project; and that, in holding itself out as specially qualified to perform the services incident to setting up and operating the crane, Eagle Grove implied a duty to exercise proper skill and perform its obligations under the contract in a workmanlike manner. Consequently, National Tank argues that Eagle Grove's contention that National Tank's Third–Party Complaint fails to state an indemnity claim under Iowa law is "simply incorrect."

In reply, Eagle Grove notes that National Tank has only urged in its resistance that there is a basis for its indemnity claim, but has offered no resistance to Eagle Grove's contention that National Tank cannot state a claim for contribution. Therefore, Eagle Grove urges the court to dismiss National Tank's contribution claim. As to National Tank's indemnity claim, Eagle Grove notes that National Tank has relied on a supposed "independent duty" between Eagle Grove and National Tank, based on an oral contract between them, to perform work in a safe and workmanlike manner. However, Eagle Grove contends that the Iowa Supreme Court partially overruled the authority upon which National Tank relied, to the extent that that authority could be read as holding that an implied agreement to indemnify would be read into all service contracts regardless of the circumstances, and without regard to the fault of the proposed indemnitee. Eagle Grove contends that the Iowa Supreme Court has specifically rejected the sort of "general duty" upon which National Tank relies as providing an adequate basis for indemnity against an employer covered by the IWCA; rather, Iowa law requires a specific and defined duty *to the party seeking indemnity* before there is a basis for indemnity of a third party against an em-

ployer providing workers' compensation benefits. Moreover, Eagle Grove contends that the "independent duty" must be such that it cannot be said to be a liability based on the employee's injury which forms the basis for the employer's workers' compensation immunity, which is all that National Tank alleges here. Finally, Eagle Grove contends that National Tank's claim is strictly an indemnity claim, not a breach-of-contract claim, so that it cannot assert a "contract" basis for indemnity.

### 3. Contribution versus indemnity

Some time ago, the Iowa Supreme Court distinguished between claims for "contribution" and "indemnity" as follows:

> Contribution is based on concurrent negligence of the parties toward the injured party and requires common liability. There are several different reasons for permitting indemnity: (1) express contract; (2) vicarious liability (respondeat superior or the statutory liability imposed on the owners of automobiles); (3) breach of an independent duty running from the employer to the third party; [and] (4) active (primary) as opposed to passive (secondary) negligence. The right of indemnity in the first three instances is based upon the relationship between the employer and the third party.
>
> Only in those instances in which the party passively negligent has been allowed indemnity from the party actively negligent, do you have a situation in which indemnity is only an extreme form of contribution. Such cases involve concurrent negligence (of different degrees) of the tort-feasors toward the injured party.

*Iowa Power & Light Co. v. Abild Constr. Co.*, 259 Iowa 314, 144 N.W.2d 303, 308–09 (1966) (internal quotation marks and citations omitted); *accord Hansen v.*

*Anderson, Wilmarth & Van Der Maaten,* 630 N.W.2d 818, 823 (Iowa 2001) (also citing these four grounds for common-law indemnity, and agreeing that the first three are based on a relationship existing between the indemnitor and the indemnitee, while the fourth is "based solely upon a common liability arising from the concurrent negligence of the parties"); *Farmers Coop. Co. v. Stockdales' Corp.,* 366 N.W.2d 184, 186 (Iowa 1985) (same); *Hysell v. Iowa Pub. Serv. Co.,* 534 F.2d 775, 782–83 (8th Cir.1976) (citing *Abild Constr. Co.*).

▬ Another distinction between the claims is that a contribution claim by a third-party against the employer of the injured person is entirely barred by the "exclusive remedy" provision of the IWCA, currently codified at IOWA CODE § 85.20. *See Abild Constr. Co.,* 144 N.W.2d at 306 (holding that there can be no "common liability" upon which to base a contribution claim between a third party and an injured party's employer, because the exclusive remedy provision means that the employer's liability is not based on negligence, so that "application of [the common liability] rule deprives [a third party] of the opportunity to secure contribution from [the injured party's employer]"); *accord Thompson v. Stearns Chem. Corp.,* 345 N.W.2d 131, 135–36 (Iowa 1984) (reaffirming the conclusion in *Abild Construction* by stating, "we decide now, as we decided in *Abild,* that the right of contribution in Iowa is conditioned on the existence of common liability," and holding that, "[s]ince no common liability exists between a third-party tortfeasor and an employer by virtue of our Workers' Compensation Act," there is no indemnity claim by a third party against an injured party's employer); *Hysell,* 534 F.2d at 783 (contribution claims of a third party against the injured party's employer were barred by the exclusive remedy provision of the IWCA, because the injured party's employer "ha[d] no liability common with that

of [the third party]," citing *Abild Constr. Co.,* 144 N.W.2d at 306). Only the fourth basis for an indemnity claim, active-passive negligence, involves "common liability," *see Abild Constr. Co.,* 144 N.W.2d at 308–09, but for that reason, the fourth basis for indemnity—described in *Abild Construction Company* as "an extreme form of contribution," *id.* at 309 (internal quotation marks and citations omitted)—is also barred by the exclusive remedy provision of the IWCA. *Id.* ("This form of indemnity is barred by the common liability rule when one of the tort-feasors is an employer under the Workmen's Compensation Act."). However, indemnity claims that are based upon the other three grounds are not based on "common liability," and hence, are not barred by the exclusive remedy provision of the IWCA. *Id.*

### 4. *National Tank's contribution claim*

▬ Eagle Grove challenges National Tank's contribution claim, first, on the basis of a lack of common liability, and second, on the ground that National Tank apparently conceded that dismissal of that claim was appropriate by failing to argue that such a claim was viable in its resistance to Eagle Grove's motion to dismiss. However, this court need not rely on National Tank's apparent waiver of the claim, based on National Tank's failure to defend the claim's viability in a resistance to Eagle Grove's motion to dismiss, because there is so clearly an "insuperable bar" to the claim under Iowa law. *See Frey,* 44 F.3d at 671 ("A motion to dismiss should be granted as a practical matter only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief.") (internal quotation marks and ellipses omitted); *accord Parnes,* 122 F.3d at 546 (also considering whether there is an "insuperable bar to

relief" on the claim). Specifically, that "insuperable bar" is the exclusive remedy provision of the Iowa Workers' Compensation Act, which establishes that there is no "common liability" between a third party and an injured party's employer. *See Abild Constr. Co.*, 144 N.W.2d at 306; *accord Hysell*, 534 F.2d at 783. Therefore, National Tank's contribution claim against Eagle Grove must be dismissed for failure to state a claim upon which relief can be granted.

### 5. National Tank's indemnity claim

Whether or not National Tank's indemnity claim against Eagle Grove can stand, notwithstanding the exclusive remedy provision of the IWCA, is a more complicated question. The court must, therefore, examine the decisions of both Iowa and federal courts applying Iowa law to the question.

### a. Indemnity claims against the plaintiff's employer under Iowa law

*i. Eighth Circuit precedent.* So far as the court and the parties have discovered, the Eighth Circuit Court of Appeals has only twice considered issues comparable to those presented in that part of Eagle Grove's motion to dismiss seeking dismissal of National Tank's third-party indemnity claim. In the older of those two cases, *Hysell v. Iowa Public Service Company*, 534 F.2d 775 (8th Cir.1976), the court concluded that an indemnity claim by a third party against the injured party's employer *could* go forward, *if* it was premised on an "independent duty" owed to the third party by the injured party's employer. *See Hysell*, 534 F.2d at 782–83. Considerably more recently, but still a decade ago, in *Merryman v. Iowa Beef Processors, Inc.*, 978 F.2d 443 (8th Cir.1992), the court concluded, first, that "Iowa . . . permit[s] a third party to recover from the employer under an express contract of in-

demnity, notwithstanding worker's compensation exclusivity." *Merryman*, 978 F.2d at 444 (citing cases). However, National Tank does not argue that it has such an express contract of indemnity. Rather, National Tank relies on other bases for indemnity, such as an "independent duty" of the indemnitor to the indemnitee. In *Merryman*, the Eighth Circuit Court of Appeals also considered the "independent duty" exception, as follows:

> IBP also contends that, even absent an express agreement to indemnify, it is entitled to indemnity because Allstate had an "independent duty" to IBP growing out of a proposal that stated that Allstate would provide "competent supervision" and would "professionally manage and complete" the project. We disagree. . . . [W]e have grave doubts whether the Iowa authorities cited by IBP survived *Woodruff Constr. Co. v. Barrick Roofers, Inc.*, 406 N.W.2d 783 (Iowa 1987). But in any event, it is clear that any such duty "must be of a specific, defined nature," and not simply the general duty of care owed to each member of society. *Hysell*, 534 F.2d at 782–83. We agree with the district court that IBP failed to present "significantly probative" evidence of that type of duty in this case.

*Merryman*, 978 F.2d at 445 (footnote omitted). Thus, assuming that the "independent duty" basis for an indemnity claim is viable under Iowa law—something the court in *Merryman* considered doubtful—under Eighth Circuit precedent, the independent duty " 'must be of a specific, defined nature,' and not simply the general duty of care owed to each member of society." *Id.* (quoting *Hysell*, 534 F.2d at 782–83). Therefore, in light of Eighth Circuit precedent, the question here, on a Rule 12(b)(6) motion to dismiss for failure to state a claim, is whether or not National

Tank has *pleaded* the necessary "type of duty" in this case.

 ***ii. Iowa precedent.*** Whatever doubts the Eighth Circuit Court of Appeals may have had in *Merryman* about the continued viability of the "independent duty" basis for an indemnity claim by a third party against an injured party's employer would seem to be dispelled by the Iowa Supreme Court's more recent, categorical statement that "workers' compensation does not function as a complete bar to suit against an employer by a third party [for indemnification] where the employer has breached an independent duty to the third party." *See Evans v. McComas–Lacina Constr. Co.*, 641 N.W.2d 841, 844 (Iowa 2002) (citing *Weggen v. Elwell–Parker Elec. Co.*, 510 F.Supp. 252, 254 (D.C.Iowa 1981), and *Herter v. Ringland–Johnson–Crowley Co.*, 492 N.W.2d 672, 673 (Iowa 1992)).[1] The exclusive remedy provision of the IWCA, Iowa Code § 85.20, provides, in pertinent part, as follows:

> The rights and remedies provided in this chapter ... for an employee ... on account of injury, occupational disease or occupational hearing loss for which benefits under this chapter ... are recoverable, shall be the exclusive and only rights and remedies of the employee ..., the employee's ... personal or legal representatives, dependents, or next of kin, at common law or otherwise, on account of such injury, occupational disease, or occupational hearing loss against ... the employee's employer.

Iowa Code § 85.20. As the Iowa Supreme Court explained in *Woodruff Constr. Co. v. Barrick Roofers, Inc.*, 406 N.W.2d 783

(Iowa 1987), the employer's immunity under section 85.20

> is only against actions for damages on account of the employee's injury; a third party's action for indemnity is not exactly for "damages" but for reimbursement, and it is not "on account of" the employee's injury, but on account of breach of an independent duty owed by the employer to the third party.

*Woodruff Constr. Co.*, 406 N.W.2d at 785 (quoting A. Larsen, *Workmen's Compensation: Third Party's Action Over Against Employer*, 65 Nw.U.L.Rev. 351, 368–69 (1970)). Thus, an indemnity claim by a third party against the injured plaintiff's employer is viable under Iowa law, *if* it is based on an "independent duty" of the employer to the third party claiming indemnity.

The court also finds that *Johnson v. Interstate Power Company*, 481 N.W.2d 310 (Iowa 1992) (*en banc*), clarifies the evolution of the "independent duty" basis for indemnity of an injured party's employer to a third party, even though *Johnson* was not, itself, such a case, but was, instead, a case in which the question was "whether a promise to indemnify a supplier of electricity should be implied from its sale." *Johnson*, 481 N.W.2d at 319 ("In essence, Interstate is arguing that an employer—like D & J—which purchases a dangerous product like electricity for use in its productive process has not only a contractual duty to pay the price of the electricity but also an implied contractual obligation to undertake the safety precautions urged by the seller," which argument the court answered with "a resounding

1. Likewise, in *Hansen v. Anderson, Wilmarth & Van Der Maaten*, 630 N.W.2d 818 (Iowa 2001), the Iowa Supreme Court considered breach of an independent duty between the indemnitor and indemnitee to be a viable basis for an indemnity claim under Iowa law, albeit not in the context of a third party claim against an injured party's employer, but in the context of an indemnity claim by one law firm, being sued for malpractice by a client, against the attorney who represented the opposing party in the client's transaction. *See Hansen*, 630 N.W.2d at 823–26.

'no.' "). The first of the pertinent portions of the *Johnson* decision, for present purposes, is the following:

> In *Blackford v. Sioux City Dressed Pork, Inc.*, 254 Iowa 845, 850–53, 118 N.W.2d 559, 562–64 (1962), *overruled on other grounds*, 406 N.W.2d 783 (1987), this court first held that section 85.20 does not automatically preclude indemnity against an employer. In that case R.E. Langley had entered into a written contract with Sioux City Dressed Pork, Inc., to furnish the labor for washing the packing plant. The contract provided that Langley was to perform the contract "as he deems fit" and that "Langley shall have responsibility for personnel employed by him, while in the plant or elsewhere." *Id.* 254 Iowa at 847, 118 N.W.2d at 560. Blackford, an employee of Langley, was hurt when his hand was caught in a meat cleaning machine.
>
> Langley paid Blackford workers' compensation benefits. Blackford then sued Sioux City Dressed Pork, claiming it was negligent in furnishing an unsafe machine. Sioux City Dressed Pork then cross-petitioned against Langley for indemnity or contribution. Sioux City Dressed Pork claimed Langley had failed to properly instruct Blackford in the use of the machine. The district court sustained a motion to dismiss the cross petition, and this court reversed.
>
> This court held that the written contract implied a duty on the part of Langley to perform the cleaning job in a workmanlike manner and with due care. This court also held there could be an implied warranty to indemnify Sioux City Dressed Pork if Langley failed to safely perform the contracted duty. *Id.* at 850–53, 118 N.W.2d at 562–64
>
> Later we held that *Blackford* should not be read to require indemnity in all service contracts. *Woodruff*, 406 N.W.2d at 787. So we overruled *Blackford* to the extent that it could be read

as holding that an implied agreement to indemnify would be read into all service contracts, "regardless of the circumstances, and without regard to the fault of the proposed indemnitee." *Id.*

*Johnson*, 481 N.W.2d at 318–19. Thus, *Johnson* confirms that there is no blanket requirement of indemnity in all service contracts.

The second portion of the *Johnson* decision that is instructive here is its discussion of what constitutes the necessary "independent duty":

> On cross-examination by Interstate's counsel, a D & J representative testified that D & J expected to use the electricity safely. The representative also testified that D & J would anticipate that Interstate would expect D & J to use the electricity safely. Interstate argues that this testimony establishes an independent duty on the part of D & J to use electricity safely and that this independent duty arises out of the agreement to purchase the electricity.
>
> > We view this testimony as describing nothing more than the general duty that every member of society owes to every other member—the duty not to harm him through tortious acts. Such a general duty does not support a right of indemnity in a case where the would-be indemnitor is an "employer" covered by the workmen's compensation law.
>
> *Hysell v. Iowa Pub. Serv. Co.*, 534 F.2d 775, 783 (8th Cir.1976) (quoting *Western Casualty & Sur. Co. v. Grolier, Inc.*, 501 F.2d 434, 438 (8th Cir.1974)). The testimony does not describe a duty that is of a "specific, defined nature" which would support a claim of indemnity against an employer. *See Hysell*, 534 F.2d at 782 (holding that an employer, through its employees, did not breach an independent duty to power company not to come

in contact with power company's transmission lines because such a duty is a general duty, not an independent one); *see also Iowa Power & Light Co. v. Abild Constr. Co.,* 259 Iowa 314, 326–27, 144 N.W.2d 303, 310–11 (1966) (holding that "duty not to cause injury to another by one's negligent act" is "too broad to serve as a basis for permitting indemnity").

Significantly, on redirect the D & J representative testified he would expect everybody to use electricity safely and that Interstate would expect people generally to use electricity safely.

The representative also testified that the only agreement that D & J had with Interstate was to pay for the electricity Interstate supplied. The representative denied there was any agreement beyond that. This testimony remained uncontroverted throughout the trial.

Viewing all this evidence in a light most favorable to Interstate, we are led to conclude there was nothing more than the sale and purchase of electricity. This falls far short of establishing a submissible issue on the question of independent duty that is crucial to Interstate's claim of indemnity against D & J.

*Johnson,* 481 N.W.2d at 320–21. Thus, *Johnson* confirms, *inter alia,* that the proper standard for the necessary "independent duty" under Iowa law is that stated by the Eighth Circuit Court of Appeals in *Hysell,* 534 F.2d at 783, and by the Iowa Supreme Court in *Iowa Power & Light Company v. Abild Construction Company,* 259 Iowa 314, 144 N.W.2d 303, 310–11 (Iowa 1966).

**b. *Sufficiency of National Tank's indemnity claim***

[redacted] ***i. The duties pleaded.*** Measured against the applicable standards, National Tank's third-party claim for indemnity against Eagle Grove fails to state a claim upon which relief can be granted. As set out more fully, above, National Tank pleads that "Eagle Grove was responsible for the set up and operation of the crane that eventually fell during the erection of the water tower in New Providence, Iowa," with the addendum that "[t]hat accident is the subject of Plaintiff Cochran's claims in this action," and allegations that Eagle Grove was "negligent" "in the set up" and "operation" of the crane, and "had inadequate safety procedures in place." National Tank's Third–Party Complaint at ¶¶ 5–8. National Tank also alleges that "[t]he negligence of Eagle Grove was the proximate cause of the injuries and damages claimed by the Plaintiff in this action," and that National Tank is, therefore, entitled to indemnity from Eagle Grove, should Cochran prevail in this action. *Id.* at ¶¶ 9–10. Thus, the pleaded duty, safe set up and operation of the crane, is only "the general duty that every member of society owes to every other member—the duty not to harm him through tortious acts," not some "independent duty" to National Tank of a "specific, defined nature." *Hysell,* 534 F.2d at 782–83; *accord Johnson,* 481 N.W.2d at 320 (quoting this standard from *Hysell*); *Abild Constr. Co,* 144 N.W.2d at 310–11 (holding that a "duty not to cause injury to another by one's negligent act" is "too broad to serve as a basis for permitting indemnity" of an employer to a third party); *see also Woodruff Constr. Co.,* 406 N.W.2d at 785 (also noting that the "independent duty" must be "owed by the employer to the third party"). Indeed, the court sees no legally significant distinction between the allegations here and the allegations of a duty to provide " 'competent supervision' and . . . 'professionally manage and complete' the project," which the Eighth Circuit Court of Appeals found were insufficient to establish the necessary "independent duty" in *Merryman.* *See Merryman,* 978 F.2d at 445. Moreover,

based on these allegations, it appears that National Tank has alleged no more than a claim for reimbursement "on account of" the employee's injury, not reimbursement "on account of breach of an independent duty owed by the employer [Eagle Grove] to the third party [National Tank]." *Compare Woodruff Constr. Co.,* 406 N.W.2d at 785 (distinguishing an indemnity action from an action for damages to which an employer is immune under the exclusive remedy provision of the IWCA).

***ii. Other implied duties.*** Nevertheless, National Tank attempts to salvage its indemnity claim by asserting that it had an implied contract with Eagle Grove under which certain independent duties were also implied, specifically, duties to complete work in a reasonably good and workmanlike manner and to exercise proper skill. First, it should be noted that these are not the duties actually *pleaded* in National Tank's third-party indemnity claim. Second, these duties are just as "general," and therefore, just as insufficient to form the basis for an indemnity claim against the injured party's employer, as the duties actually alleged. The court must, perforce agree with National Tank that in *Blackford v. Sioux City Dressed Pork, Inc.,* 254 Iowa 845, 118 N.W.2d 559 (Iowa 1962), the Iowa Supreme Court permitted an indemnity action by a third party against the injured party's employer to proceed on the ground that, under the contract between the third party and the employer, the employer's "implied agreement was to do the work safely." *Blackford,* 118 N.W.2d at 563–64 & 565. However, as Eagle Grove contends, National Tank's reliance on *Blackford* for the proposition that the implied duties upon which it now relies are adequate to support an indemnity claim is misplaced, because the pertinent portion of *Blackford* was expressly overruled in *Woodruff,* as noted in *Johnson. See Johnson,* 481 N.W.2d at 318 (citing *Woodruff Constr. Co.,* 406 N.W.2d at 787). In *Wood-*

*ruff,* the Iowa Supreme Court held that, "to the extent *Blackford* may be read as holding that an implied agreement to indemnify will be read into all service contracts, regardless of the circumstances, and without regard to the fault of the proposed indemnitee, it is hereby expressly overruled." *Woodruff,* 406 N.W.2d at 787. Thus, *Blackford* provides no authority that the "general duties" that National Tank contends were implied in its contract with Eagle Grove are sufficient to support its indemnity claim.

Next, National Tank contends that, in *Abild Construction,* the Iowa Supreme Court recognized that failing to perform contractual obligations breached an independent duty running from an employer to the third party and supported a claim for indemnity despite the IWCA, citing *Abild Construction,* 144 N.W.2d at 309. Similarly here, National Tank argues, the duties implied in its oral contract with Eagle Grove are independent duties to perform work safely and in a workmanlike manner, which provide sufficient basis for the indemnity claim. Again, the court must perforce agree that, in *Abild Construction,* the court concluded that the duties upon which an indemnity claim was based "were matters of contract between the parties and the duties arise out of the contract." *Abild Constr. Co.,* 144 N.W.2d at 309. However, first, the duties arising out of the contract in *Abild Construction,* even assuming that they were "implied" and not "express," were not "general" ones like those upon which National Tank relies here; rather, they were both "specific" duties and duties *of the employer to the third party* to notify the third party "when the [power] lines should be moved or the current turned off as [the employer] allegedly agreed to do." *Id.* Thus, the duties in question in *Abild Construction* were plainly distinguishable from the duties at issue here. Second, the court in *Abild Con-*

*struction* held that "any right of indemnity here must be based on the duties assumed under the alleged agreement to notify [the third party]," so that the trial court had properly dismissed Count I of the third party's petition, *see id.* at 310, the count in which the third party had sought indemnity "on the ground that [the employee's] injury was caused by [the employer's] primary and active negligence," *id.* at 306, but here, National Tank has not asserted that it is entitled to indemnity pursuant to contract, the surviving count in *Abild.* Third, to the extent that the court in *Abild Construction* found it necessary to distinguish *Blackford,* it was on the ground that *Blackford* did not involve primary and secondary negligence, but that was the basis for indemnity asserted in the count then at issue in *Abild Construction.* *See id.* at 309–10. As explained above, *Blackford* has since been overruled in pertinent part, and the court in *Abild Construction* held that indemnity of an employer to a third party based on active-passive negligence was barred by the common liability rule and the exclusive remedy provision of the IWCA. *Id.* at 309. Thus, *Abild Construction* also does not support National Tank's indemnity claim, even assuming that National Tank had pleaded the duties upon which it now relies.

■ ***iii. Other common-law theories of indemnity.*** Finally, the court must consider the additional common-law theories for National Tank's indemnity action, besides an "independent duty," which National Tank asserts in passing may also be applicable here. The first of these additional common-law theories is " '[w]here the one seeking indemnity has incurred liability by action at the direction, in the interest of, and in reliance upon the one sought to be charged,' " and relies on RESTATEMENT OF RESTITUTION § 90, and the second is " '[w]here the one seeking indemnity has incurred liability merely because of failure, even though negligent, to discov-

er or prevent the misconduct of the one sought to be charged.' " *See* National Tank's Brief Supporting Resistence [sic] to Third–Party Defendant Eagle Grove's Motion to Dismiss Third–Party Plaintiff National Tank's Third–Party Complaint at 7 (quoting *Hansen v. Anderson,* 630 N.W.2d 818, 823 (Iowa 2001), in turn quoting *C.F. Sales, Inc. v. Amfert, Inc.,* 344 N.W.2d 543, 553–54 (Iowa 1983), also in turn quoting *Peters v. Lyons,* 168 N.W.2d 759, 767 (Iowa 1969)). The first answer to the contention that these theories save National Tank's indemnity claim here is that it is not at all apparent that National Tank has, in any sense, pleaded them based on the allegations actually made in the third-party complaint; thus, they simply do not seem be pertinent here. The second answer is that, although these may be common-law bases for indemnity, National Tank has not cited, and this court has not found, any Iowa decision recognizing these common-law bases as applicable to a claim of indemnity by a third party against an injured party's employer in light of the exclusive remedy provision of the IWCA. Rather, the *only* basis for an indemnity claim by a third party against an injured party's employer that is recognized by Iowa law is the "independent duty" basis. Third, the "failure to discover or prevent misconduct" theory appears to be barred by the Iowa Comparative Fault Act, as explained in somewhat more detail below, in reference to Gehrke's partial motion to dismiss National Tank's indemnity claim against it.

Therefore, the court finds that no viable theory has been pleaded for an indemnity claim by National Tank against Eagle Grove, where Eagle Grove is Cochran's employer. The absence of a viable theory for the claim is an "insuperable bar," and Eagle Grove is entitled to dismissal of the indemnity claim, as well as the contribution claim, against it.

### C. Gehrke's Motion For Partial Dismissal Of The Cross–Claim

#### 1. National Tank's Cross–Claim

In its cross-claim against Gehrke, National Tank alleges that "Gehrke, as general contractor, had overall responsibility for safety on the job site that is the subject of this lawsuit," but that "Gehrke was negligent in its supervision of the job site at the time of the set up of the crane and the accident, and its negligence was a proximate cause of the injuries and damages claimed by the Plaintiff," presumably meaning Cochran. *See* National Tank Corporation's Cross–Claim Against Gehrke Construction at ¶ 3.[2] The Cross–Claim continues as follows:

> 5. National Tank was not directly or indirectly at fault for the accident that occurred during the erection of the water tower, and did not have responsibility for oversight of the project on the day of the accident involving Plaintiff.

> 6. National Tank is entitled to indemnity from Gehrke, as Gehrke was the party responsible for safety on the job site and National Tank was not at fault in this matter.

> 7. In the alternative, if National Tank is found to be at fault, it is entitled to contribution from Gehrke, as Gehrke was at fault and responsible to oversee all operations on the day of the accident.

Cross–Claim at ¶¶ 5–7. Based on these allegations, "National Tank prays for judgment on its cross-claim for contribution and/or indemnity against Gehrke Construction," plus costs and such other relief as the court deems appropriate. *Id.* at Prayer.

**2.** In its cross-claim, National Tank also alleges that Eagle Grove was negligent and that Eagle Grove's negligence was a proximate cause of any injuries and damages to Cochran, *see* Cross–Claim at ¶ 4, but that allegation does not appear to be pleaded as a basis for

#### 2. Arguments of the parties

Gehrke apparently recognizes that National Tank has pleaded a "common liability" basis for its alternative contribution claim, and that there is no bar to such a claim against Gehrke under the IWCA, where Gehrke was not the injured party's employer, because Gehrke does not seek dismissal of National Tank's contribution claim. Rather, Gehrke has only moved to dismiss that part of National Tank's cross-claim asserting an indemnity claim against Gehrke. Although Gehrke contends that the theory upon which National Tank's cross-claim for indemnity is based is not clear from the pleadings, Gehrke contends that National Tank has not alleged any facts that state an indemnity claim against Gehrke under any of the limited and specific grounds upon which such a claim can be based. Like Eagle Grove, Gehrke contends that the limited grounds for a common-law indemnity claim that had been recognized under Iowa law are (1) express contract; (2) vicarious liability; (3) breach of an independent duty running from the employer to the third party; and (4) active (primary) as opposed to passive (secondary) negligence. Gehrke contends, however, that the fourth ground was abandoned as incompatible with Iowa's Comparative Fault Act. Gehrke contends that the allegation that it was responsible for safety on the job site plainly does not allege an express contract, vicarious liability, or "independent duty" basis for indemnity. Instead, Gehrke contends that National Tank has asserted some sort of "general" theory of indemnity, which appears to fit most nearly with the active-passive theory abandoned by Iowa courts.

National Tank's indemnity or contribution claims against Gehrke, except to the extent that it is a companion to National Tank's allegations, in ¶ 5, that National Tank was not itself directly or indirectly at fault for the accident.

In its resistance to Gehrke's motion, however, National Tank clarifies that it is seeking indemnity on the basis of an "independent duty" that Gehrke owed to National Tank to exercise reasonable care in maintaining safety over the job site where the accident causing Cochran's injuries occurred, and Gehrke's negligent breach of that duty. National Tank contends that Gehrke "retained control" of enough of the work to be performed to be held liable on an indemnity claim to National Tank. National Tank also contends that it has satisfied "notice pleading" requirements for its indemnity claim, so that its indemnity claim should not be dismissed, where discovery may disclose further bases for seeking indemnity against Gehrke.

### 3. National Tank's indemnity claim against Gehrke

 Not only is the fourth ground for common-law indemnity, active-passive negligence, barred by the exclusive remedy provision of the Iowa Workers' Compensation Act, when the claim is brought by a third party, such as National Tank, against an injured person's employer, such as Eagle Grove, as explained above, but in circumstances involving tortfeasors with "common liability," such as National Tank and Gehrke, the ground also is not available. This is so, because "[s]ince *Farmers [Coop. Co. v. Stockdales' Corp.*, 366 N.W.2d 184 (Iowa 1985) ], [Iowa courts] have abandoned the primary/active versus secondary/passive liability because it is incompatible with 'our statutory network of comparative fault.' " *Hansen*, 630 N.W.2d at 823 (quoting *American Trust & Sav. Bank. v. United States Fid. & Guar. Co.*, 439 N.W.2d 188, 190 (Iowa 1989)). However, as National Tank has made clear, it is not relying on active-passive negligence, as Gehrke contended, but is instead relying on the "independent duty" ground for indemnity. Although Gehrke made, at best, a conclusory assertion that National

Tank had not adequately alleged the "independent duty" ground for indemnity it its cross-claim, and did not reply to National Tank's clarification that National Tank is, indeed, relying on that "independent duty" ground, the court will nevertheless briefly consider whether National Tank's allegations in the cross-claim are sufficient to state an indemnity claim against Gehrke on an "independent duty" ground.

However, first, the court finds that National Tank's arguments based on the "general rule" stated in RESTATEMENT (SECOND) OF TORTS § 409, and the exceptions to that rule stated in §§ 410–429 of the RESTATEMENT, as set forth in this court's decision in *Goebel v. Dean & Assocs.*, 91 F.Supp.2d 1268, 1274–83 (N.D.Iowa 2000), and the Iowa Supreme Court's decision in *Kragel v. Wal–Mart Stores, Inc.*, 537 N.W.2d 699, 702 (Iowa 1995), are simply wide of the mark. This should be apparent by comparing the "general rule" of § 409 to the circumstances of National Tank's indemnity claim against Gehrke. The "general rule" of § 409 is as follows:

> Except as stated in § 410–429, the employer of an independent contractor is not liable for physical harm caused to another by an act or omission of the contractor or his servants.

RESTATEMENT (SECOND) OF TORTS § 409. This *case* may involve the question of whether National Tank, as the employer of an independent contractor, Eagle Grove, can be held liable for physical harm caused to another, Cochran, "by an act or omission of the contractor or his servants," which here would be Eagle Grove or its servants. However, Gehrke is the employer of National Tank, as a subcontractor, not the other way around. Therefore, even if § 409 and its exceptions might otherwise be applicable to Gehrke's liability *to Cochran*, § 409 does not appear to be applicable to a subcontractor's indemnity

action against the general contractor on the claims of an injured employee of another subcontractor.

The court has not found an Iowa decision involving an indemnity claim by a subcontractor against the general contractor relying upon the "independent duty" rule. Although the relationship of the parties vis-à-vis each other and the injured person is critical to the application of § 409 of the RESTATEMENT, those relationships do not appear to be critical to the determination of what constitutes an adequate "independent duty" for imposing common-law indemnity from a general contractor to a subcontractor for injuries to another. Thus, the standards discussed above, in reference to National Tank's third-party claim for indemnity against Eagle Grove, for what constitutes the necessary "independent duty" appear to be equally applicable here. Thus, the question is whether Gehrke's alleged duty to supervise and maintain the safety of the job site is the sort of duty of "a specific, defined nature," running from Gehrke to National Tank, and not simply the general duty of care owed to each member of society. *See, e.g., Hysell,* 534 F.2d at 782–83; *accord Johnson,* 481 N.W.2d at 320 (quoting this standard from *Hysell*); *Abild Constr. Co.,* 144 N.W.2d at 310–11 (holding that a "duty not to cause injury to another by one's negligent act" is "too broad to serve as a basis for permitting indemnity" of an employer to a third party); *see also Woodruff Constr. Co.,* 406 N.W.2d at 785 (also noting that the "independent duty" must be "owed by the employer to the third party"). Plainly, however, it is only a "general duty." Indeed, the similarity is even closer here between the allegations of a duty on Gehrke's part to supervise and maintain the safety of the job site and the duties in *Merryman* to provide " 'competent supervision' and ... 'professionally manage and complete' the project," which the Eighth Circuit Court of

Appeals found were insufficient to establish the necessary "independent duty," *see Merryman,* 978 F.2d at 445, than it was between the duties alleged here on the part of Eagle Grove and the duties alleged in *Merryman.*

Therefore, National Tank's cross-claim lacks a viable theory for an indemnity action against Gehrke, and that shortcoming stands as an "insuperable bar" to the claim warranting dismissal. *See Frey,* 44 F.3d at 671 ("A motion to dismiss should be granted as a practical matter only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief.") (internal quotation marks and ellipses omitted); *accord Parnes,* 122 F.3d at 546 (also considering whether there is an "insuperable bar to relief" on the claim).

## III. CONCLUSION

The court holds that the challenged indemnity and contribution claims by National Tank fail to state claims upon which relief can be granted. There must be "common liability" between Eagle Grove and National Tank for National Tank's contribution claim against Eagle Grove to lie, but there is no such "common liability" where National Tank's liability is based on negligence, but Eagle Grove's liability would be exclusively based on the Iowa Workers' Compensation Act. National Tank has also failed to state an "independent duty" from Eagle Grove to National Tank that would sustain National Tank's indemnity claim against Eagle Grove. Neither the duties actually pleaded, safe set up and operation of the crane, nor the duties that National Tank also argues are implied in its oral contract with Eagle Gove, a duty to exercise proper skill and perform its obligations under the contract in a workmanlike manner, is an "independent duty" to National Tank of a "specific,

defined nature"; rather, each duty attributed to Eagle Grove is only a "general duty that every member of society owes to every other member—the duty not to harm him through tortious acts." Similarly, the duty for Gehrke that is pleaded as the basis for National Tank's indemnity claim against that defendant, a duty to supervise and maintain the safety of the job site, is not the sort of duty of "a specific, defined nature," running from Gehrke to National Tank, but only a general duty of care owed to each member of society.

THEREFORE,

1. Eagle Grove's August 7, 2002, Motion to Dismiss National Tank's Third–Party Complaint against Eagle Grove is **granted**, and the Third–Party Complaint is **dismissed in its entirety.**

2. Gehrke's August 15, 2002, Partial Motion to Dismiss National Tank's Cross–Claim, is **granted**. The portion of the cross-claim asserting a claim for indemnity is **dismissed.**

**IT IS SO ORDERED.**